JOHN DOE 67C, Jane Doe 67E, Jonathan Gillespie,
John Doe 67D, and Jim Gillespie,
Plaintiffs-Appellants,

v.

ARCHDIOCESE OF MILWAUKEE, St. John the
Evangelist Church, Alias Insurance Company #1,
and Alias Insurance Company #2,
Defendants-Respondents.

JOHN DOE 67A, James Ahler, Plaintiffs-Appellants,

JOHN DOE 67F, Plaintiff-Appellant-Petitioner,

Gregory HUDON, and John Doe 67B,
Plaintiffs-Appellants,

v.

ARCHDIOCESE OF MILWAUKEE, St. John the
Evangelist Church, Alias Insurance Company #1,
and Alias Insurance Company #2,
Defendants-Respondents.

Supreme Court

*No. 2003AP1416 & 2003AP1417. Oral argument April 12, 2005.
—Decided July 13, 2005.*

2005 WI 123

(Also reported in 700 N.W.2d 180.)

309

310

For the plaintiffs-appellants there were briefs by *Jeffrey R. Anderson* and *Jeff Anderson & Associates,* St. Paul, MN, and *Marci A. Hamilton* and *Benjamin Cardozo School of Law,* New York, NY, and *James S. Smith* and *Steinhafel, Smith & Rowen SC,* Brookfield, and oral argument by *Marci A. Hamilton.*

For the defendants-respondents there was a brief by *John A. Rothstein, O. Thomas Armstrong, David P. Muth* and *Quarles & Brady LLP,* Milwaukee, and oral argument by *John A. Rothstein.*

An amicus curiae brief was filed by *James A. Johnson* and *Johnson & Houlihan, S.C.,* Rhinelander, on behalf of the Leadership Council on Child Abuse & Interpersonal Violence.

¶ 1. DAVID T. PROSSER, J. This is a review of an unpublished decision of the court of appeals, *John Doe 67C v. Archdiocese of Milwaukee,* Nos. 2003AP1416 and 2003AP1417, unpublished slip op. (Wis. Ct. App. July 30, 2004), affirming an order of the circuit court for Milwaukee County, Michael D. Guolee, Judge, dismissing plaintiff John Doe 67F's lawsuit against the Archdiocese of Milwaukee (the Archdiocese). We are called upon to decide whether John Doe 67F's (Doe) complaint states a claim upon which relief can be granted. We hold that it does not, and therefore affirm the decision of the court of appeals.

¶ 2. Doe alleges that Father George Nuedling, a priest of the Archdiocese, sexually abused him during the years 1960–62, while Nuedling served at St. Rita Parish in West Allis, Wisconsin. He alleges that because of the traumatic nature of Nuedling's abuse, he immediately repressed all memory of it. Doe claims that his

memories surfaced in 2002, amid revelations by the Archdiocese that it knew about Nuedling's abusive tendencies as early as the 1980s. Because Nuedling died in 1994, Doe could not directly sue him; accordingly, he (and nine other plaintiffs alleging abuse by Nuedling) sued the Archdiocese, Nuedling's employer.

¶ 3. Doe's suit alleges three causes of action: negligence, "fiduciary fraud," and breach of fiduciary duty. Under the first theory, Doe alleges that the Archdiocese negligently supervised its employee, Nuedling. Under the second theory, Doe alleges that the Archdiocese both affirmatively misrepresented information about Nuedling and concealed information about Nuedling. Under the third theory, Doe alleges that the Archdiocese concealed information about Nuedling despite its alleged fiduciary relationship with Doe.

¶ 4. The circuit court dismissed Doe's suit, relying on our decisions in *John BBB Doe v. Archdiocese of Milwaukee,* 211 Wis. 2d 312, 565 N.W.2d 94 (1997), *L.L.N. v. Clauder,* 209 Wis. 2d 674, 563 N.W.2d 434 (1997), and *Pritzlaff v. Archdiocese of Milwaukee,* 194 Wis. 2d 302, 533 N.W.2d 780 (1995). This appeal stems from that dismissal.

¶ 5. We note at the outset that all three causes of action require that at the time of Nuedling's alleged wrongful acts (1960–62), the Archdiocese had contemporaneous knowledge of Nuedling's abusive tendencies. Doe's complaint broadly alleges that the Archdiocese "knew or should have known of Nuedling's problems . . . ." It provides the basis for this claim by alleging that the Archdiocese had knowledge about Nuedling from events that occurred in 1980, 1986, 1987, 1993, 2001, and 2002. The complaint asserts nothing from which a person could infer that the Archdiocese had knowledge of Nuedling's misconduct before 1980.

¶ 6. We conclude that for any of Doe's claims to survive, he had to allege that the Archdiocese knew or had a basis for knowing that Nuedling was a child molester *as of 1960–62.* His complaint makes no such allegations. As we cannot add unpleaded facts to Doe's complaint, we affirm the circuit court's dismissal of his claims without reaching the other defenses the Archdiocese raises.

# I. BACKGROUND

¶ 7. When analyzing the circuit court's order dismissing Doe's claim, we must assume that the Archdiocese has admitted all the facts alleged in the complaint. *Hermann v. Town of Delavan,* 215 Wis. 2d 370, 378, 572 N.W.2d 855 (1998) (citing *Evans v. Cameron,* 121 Wis. 2d 421, 426, 360 N.W.2d 25 (1985)). Nuedling was ordained to the Roman Catholic priesthood on May 29, 1948. During his career, he worked at four parishes in the Archdiocese: St. Rita in West Allis (1948–64), St. Lawrence in Milwaukee (1964–67), St. Joseph in Grafton (1967–68), and St. John the Evangelist in Twin Lakes (1968–93). Nuedling died in 1994.

¶ 8. This appeal is a consolidation of ten lawsuits filed in Milwaukee County Circuit Court. All ten plaintiffs alleged abuse by Nuedling at some point during his career.

¶ 9. The ten complaints are quite similar. Doe's trial attorneys, Jeffrey R. Anderson and James S. Smith, represented all ten plaintiffs. On December 6, 2002, Anderson and Smith filed the first five cases for plaintiffs John Doe 67C, John Doe 67D, Jane Doe 67E, Jim Gillespie, and Jonathan Gillespie. The five com-

plaints are nearly identical. All five plaintiffs alleged the same four causes of action: sexual battery, negligence, fiduciary fraud, and breach of fiduciary duty. All five alleged that the abuse occurred while Nuedling was pastor at St. John the Evangelist Church. The complaints contained the same number of paragraphs (52) and are textually identical except for minor details such as the names of the plaintiffs and the dates of the alleged abuse.

¶ 10. These five cases were consolidated by circuit court orders dated January 4, 2003. The Archdiocese filed a motion to dismiss the consolidated action on January 16, 2003.

¶ 11. On March 6, 2003, Anderson and Smith filed a second set of five cases, this time on behalf of James Ahler, Gregory Hudon, John Doe 67A, John Doe 67B, and John Doe 67F. Ahler, Hudon, Doe 67A, and Doe 67B alleged that the abuse occurred during Nuedling's tenure at St. John the Evangelist; the fifth plaintiff, John Doe 67F, alleged that the abuse occurred while Nuedling served at St. Rita in West Allis.

¶ 12. Unlike the first group of plaintiffs, the second group did not allege sexual battery as a theory of liability; however, in all other respects their complaints were largely identical to the first group's.[1] The second

---

[1] In the second set of complaints, the underlined words in the following text were added to the end of paragraph 19: "Plaintiff [name] therefore, experienced delayed discovery of his injuries and their causal relationship to the sexual exploitation, *and/or Defendants' conduct,* and did not know or have reason to know that he was injured or that his injuries were caused by the sexual exploitation *and/or Defendants' conduct. Additionally, not until recent events in the media did Plaintiff become aware of Defendants' acts upon which liability is based. Therefore, Plaintiff's Complaint is timely.*"

group alleged negligence, fiduciary fraud, and breach of fiduciary duty, as did the first group.

¶ 13. On March 10, 2003, the circuit court held a hearing to consider the Archdiocese's motion to dismiss the first set of cases. At this hearing, the plaintiffs' attorney voluntarily dismissed the sexual battery claims. He also addressed the issue of the date the Archdiocese knew of Nuedling's abusive proclivities:

> And only this last year did [the plaintiffs] know that the church, the Archdiocese, the bishop and the archbishops knew that Nuedling had been a molester *and had so known for 20 or more years, 20 or more years.*
>
> . . . .
>
> And when do [the plaintiffs] first discover the [Archdiocese's] fraud? Last year [2002] when it was made known for the first time at least to [the plaintiffs], as far as we know to anybody else besides the officials of the church, that they had known that Nuedling was a molester, unfit . . . . And that they had received reports about him in the past *for over two decades.*

(Emphasis added.)

¶ 14. When questioned by the court as to the adequacy of the first five complaints regarding the date of the Archdiocese's knowledge, counsel responded:

> [W]e plead the report of '86. We plead the report in '87. We plead the report of '93. We plead the report in . . . July of 2001. We plead the report at 2002. . . . They failed to disclose *this information.*

(Emphasis added.)

---

The second set of complaints did not allege the cause of action of sexual battery.

As in the first group of five complaints, the second set of complaints contains minor textual differences such as the names of the plaintiffs and dates of the alleged abuse.

318

¶ 15. The argument before the circuit court centered on whether our decisions in *BBB Doe, Pritzlaff,* and *Clauder,* in combination, mandated dismissal of the plaintiffs' claims. The Archdiocese argued that the instant claims are largely identical to the claims in *John BBB Doe,* while the plaintiffs attempted to distinguish all three cases. Ultimately, the circuit court sided with the Archdiocese, stating:

> The plaintiff doesn't agree with the Wisconsin Supreme Court opinion[s] in *Doe* or *Pritzlaff.* They try to distinguish this case from that, but I think they failed to do so.
>
> When you really read their Complaint and look at the case law, if they want to convince the Wisconsin Supreme Court to reverse the legal consideration or precedent that they have established, that is for the Wisconsin Supreme Court to do so.
>
> . . . As I indicated before, this Court is not in the position, nor does it have the authority to overrule a Wisconsin Supreme Court decision I believe is directly on point here. No matter how we might try to embellish the arguments. It is the law of this state, and this trial court is obligated and mandated to follow the rulings of the highest court of our state. . . .
>
> . . . .
>
> Based on the law as I read it and based on this Complaint, I am forced to dismiss all these actions failing to state a cause of action under the statute of limitations that they can proceed.

¶ 16. Both sides realized that the court's ruling dismissing the first group of claims was fatal to the second group, as the ten complaints were largely identical.[2] Accordingly, the parties stipulated to dismissal with prejudice of the second group of claims.

---

[2] *See supra* n.1.

¶ 17. All ten plaintiffs appealed. However, by the time the court of appeals rendered its decision, nine of the ten had voluntarily dismissed their appeals. The court of appeals affirmed the circuit court's dismissal of the claims filed by the only remaining plaintiff, John Doe 67F, "because governing decisions by the Wisconsin Supreme Court require it." *John Doe 67A v. Archdiocese of Milwaukee,* Nos. 2003AP1416 and 2003AP1417, unpublished slip op., ¶ 1 (Wis. Ct. App. July 30, 2004). The court of appeals expressed some discomfort with this holding, commenting that: "Were we writing on a clean slate, we might very well agree with appellants that they are entitled to an attempt to prove their contentions. But we are not." *Id.,* ¶ 3.

¶ 18. The court of appeals plainly acknowledged that "According to the appellants[] . . . , the only issue presented on this appeal is whether the 'discovery rule' applies." *Id.,* ¶ 1. It resolved that issue in favor of the Archdiocese: "[T]he discovery-rule tolling does not save appellants' direct claims against the Archdiocese and the Church." *Id.,* ¶ 5. Although it thus resolved the "only issue presented," *id.,* ¶ 1, the court of appeals did not end its opinion. It continued on, explaining that "Additionally, negligent–supervision claims against a religious body are barred in Wisconsin by the Establishment Clause of the First Amendment." *Id.,* ¶ 6 (citing *Pritzlaff,* 194 Wis. 2d at 325–31, and *Clauder,* 209 Wis. 2d at 686–98). We granted Doe's petition for review.

## II. STANDARD OF REVIEW

¶ 19. We review de novo the circuit court's dismissal of a complaint for failure to state a claim. *Nat'l*

*Operating, L.P. v. Mut. Life Ins. Co. of New York,* 2001 WI 87, ¶ 28, 244 Wis. 2d 839, 630 N.W.2d 116. A motion to dismiss for failure to state a claim "tests the legal sufficiency of the complaint." *BBB Doe,* 211 Wis. 2d at 331. A reviewing court "accept[s] the facts pled as true for purposes of [its] review, [but is] not required to assume as true legal conclusions pled by the plaintiffs." *Id.* Although the court must accept the facts pleaded as true, it cannot add facts in the process of liberally construing the complaint. 3 Jay E. Grenig, *Wisconsin Practice: Civil Procedure* § 206.11 at 304 (West, 3d. ed. 2003) (hereinafter Grenig, *Civil Procedure*). Rather, "[i]t is the sufficiency of the facts *alleged* that control[s] the determination of whether a claim for relief" is properly pled. *Strid v. Converse,* 111 Wis. 2d 418, 422–423, 331 N.W.2d 350 (1983) (emphasis added).

■

¶ 20. The court should not draw unreasonable inferences from the pleadings. *Morgan v. Pa. Gen. Ins. Co.,* 87 Wis. 2d 723, 731, 275 N.W.2d 660 (1979). After liberally construing the complaint, a court should dismiss a plaintiff's claims if it is "quite clear" that there are no conditions under which that plaintiff could recover. *Id.; see also Prah v. Maretti,* 108 Wis. 2d 223, 229, 321 N.W.2d 182 (1982) (both citing Charles D. Clausen & David P. Lowe, *The New Wisconsin Rules of Civil Procedure, Chapters 801–803,* 59 Marq. L. Rev. 1, 54 (1976) (hereinafter Clausen, *The New Wisconsin Rules of Civil Procedure*)). In other words, "A claim should not be dismissed . . . unless it appears to a certainty that no relief can be granted under any set of facts that plaintiff can prove in support of his allegations." *Morgan,* 87 Wis. 2d at 732.

## III. ANALYSIS

### A. Background

¶ 21. Doe's complaint alleges three causes of action against the Archdiocese. The first is negligence. In essence, Doe alleges that the Archdiocese committed the tort of negligent supervision because it "knew or should have known" that its employee, Nuedling, was in fact a notorious pedophile.[3] Despite this knowledge, Doe claims, the Archdiocese did not remove Nuedling or restrict his activities. Doe's second cause of action is "fiduciary fraud." He alleges that the Archdiocese committed fraud both by making affirmative misrepresentations and by deliberately concealing information about Nuedling. Doe's third cause of action is breach of fiduciary duty. He alleges that the Archdiocese possessed and did not disclose information in its possession to the effect that Nuedling was a serial child abuser. He argues that by not disclosing this information, the Archdiocese simultaneously committed the torts of fiduciary fraud[4] and breach of fiduciary duty.

---

[3] This court did not recognize the tort of "negligent supervision" until 1998. *Miller v. Wal-Mart Stores, Inc.,* 219 Wis. 2d 250, 267–68, 580 N.W.2d 233 (1998). Doe argues that because he did not discover his claims until 2002, four years after our decision in *Miller,* he can benefit from that holding despite the fact that the Archdiocese's allegedly wrongful conduct occurred in 1960–62. Given our holding in this case, we need not address this argument.

[4] As we discuss below, fraud generally requires an intentional misrepresentation. *See State v. Jadowski,* 2004 WI 68, ¶ 1 n.2, 272 Wis. 2d 418, 680 N.W.2d 810 ("fraud" and "intentional misrepresentation" are synonymous). Doe argues that because the Archdiocese owed him a fiduciary duty (another

¶ 22. The Archdiocese makes several arguments in response. First, the Archdiocese argues that under *BBB Doe,* Doe's claims are barred by the statute of limitations. Second, the Archdiocese argues that this state's public policy against stale claims bars Doe's claims. *See BBB Doe,* 211 Wis. 2d at 365, *Pritzlaff,* 194 Wis. 2d at 322. Third, the Archdiocese argues in passing that the First Amendment bars Doe's claims. *See Clauder,* 209 Wis. 2d at 686 (First Amendment's Establishment Clause, applicable to the states via the Fourteenth Amendment, prohibits government from interpreting church law, policies, or practices, and thus becoming excessively entangled in religious doctrinal matters).

## B. Applicability of the Statute of Limitations

¶ 23. Doe alleges that Nuedling abused him between 1960 and 1962, i.e., between 43 and 45 years ago. Ordinarily, such a claim would be barred by the present statute of limitations, Wis. Stat. § 893.54(1) (2001–02),[5] which bars actions "to recover damages for injuries to the person" after three years. Thus, ordinarily Doe's claims would have been barred as of 1965, at the latest. However, Doe was a minor at the time of the alleged abuse, and so the limitation period would have been tolled by present Wis. Stat. § 893.16, "Person under disability." That statute extends the limitation period applicable to a minor child's claim until a date two years after the child reaches the age of majority, 18. Wis. Stat. § 893.16(1). Prior to 1971, though, the age of majority

question we need not decide), it had a *duty* to disclose this information, and its failure to disclose constituted "fiduciary fraud."

[5] All subsequent references to the Wisconsin Statutes are to the 2001–02 edition unless otherwise indicated.

was 21, not 18. *See* § 5, ch. 213, Laws of 1971. Doe alleges that he was 13 at the time the abuse began in 1960, meaning that he was born in 1946 or 1947. Thus Doe would have turned 21 in 1967 or 1968, and his claim would have been barred by 1969 or 1970.[6]

¶ 24. Doe acknowledges this, but argues that the limitations period applicable to his claim was further tolled by the "discovery rule" we recognized in *Hansen v. A.H. Robins Co.,* 113 Wis. 2d 550, 335 N.W.2d 578 (1983). "In the interest of justice and fundamental fairness," the *Hansen* court held that tort claims "shall accrue on the date the injury is discovered or with reasonable diligence should be discovered, whichever occurs first." *Hansen,* 113 Wis. 2d at 560. The cause of injury does not accrue until the plaintiff discovers both the nature of his injury and the cause of his injury. *Pritzlaff,* 194 Wis. 2d at 314–15 (citing *Borello v. United States Oil Co.,* 130 Wis. 2d 397, 406–07, 388 N.W.2d 140 (1986)).

¶ 25. In *BBB Doe,* this court answered the following question certified by the court of appeals: "Does the discovery rule save an otherwise untimely, non-incestuous, sexual assault claim against the individual alleged perpetrator when the alleged victim was a minor, and the alleged perpetrator was a person in a position of trust vis-à–vis the child/victim?" *BBB Doe,* 211 Wis. 2d at 318. The court concluded

> that the plaintiffs' claims were not timely filed because each of the plaintiffs discovered, or in the exercise of

---

[6] Wisconsin Stat. § 893.33(3) (1969–70) actually extended the time period for commencing an action only "one year after the disability [of "infancy"] ceases."

reasonable diligence, should have discovered that he or she was injured at the time of the alleged assault(s) or by the last date of the alleged multiple assaults. Consequently, each plaintiff should have filed his or her action within the applicable statutory period of one or two years after reaching majority.

*Id.* at 318–19. As the court put it: "actionable injury flows immediately from a nonconsensual, intentional sexual touching. While the plaintiffs may not have known the extent of their injuries at the time of the sexual assaults, in Wisconsin accrual of an action is not dependent upon knowing the full extent of one's injuries." *Id.* at 343–44 (citing *Pritzlaff,* 194 Wis. 2d at 317). The *BBB Doe* court thus concluded that the circuit court properly dismissed the plaintiffs' claims, even though some of the plaintiffs argued that they had repressed all memory of the assaults, as does Doe in the instant case. *Id.* at 319.

¶ 26. Additionally, we concluded that there was no need to address the plaintiffs' claims based on "respondeat superior and negligent employment theories" because "[p]laintiffs' derivative causes of action against the Archdiocese and the churches accrued at the same time that the underlying intentional tort claims accrued, and similarly would be barred by the statute of limitations." *Id.* at 366.

¶ 27. Concurring in *BBB Doe,* Chief Justice Shirley S. Abrahamson stated, "This case is largely governed by and inexorably follows from [*Pritzlaff*]." *Id.* We now examine *Pritzlaff.*

¶ 28. In *Pritzlaff,* the plaintiff alleged that, while she was a high school student, a priest used his position of authority to develop a friendly relationship between the two. *Pritzlaff,* 194 Wis. 2d at 307–08. Through the years, she alleged, the friendship escalated into a sexual

relationship that caused her severe emotional distress and led to the breakup of her marriage. *Id.* Like the plaintiff in the instant case, Pritzlaff argued that she had not brought suit earlier because she "has suppressed and been unable to perceive the existence, nature or cause of her psychological and emotional injuries . . . ." *Id.* at 315. Pritzlaff admitted, though, that she could remember the sexual relations; she simply did not become aware of the full level of her emotional damage until later. *Id.* at 317 n.5. Accordingly, the court held, "Pritzlaff could have alleged a complete cause of action against [the priest] by the time the . . . relationship ended. That [she] was unaware of additional harm ("severe emotional distress") only created uncertainty as to the amount of damages and did not toll the period of limitations." *Id.* at 317.

¶ 29. The *Pritzlaff* court recognized that the discovery rule has limits: "the discovery rule will apply only when allowing meritorious claims outweighs the threat of stale or fraudulent actions." *Id.* at 322 (citing *Hansen,* 113 Wis. 2d at 559). The court recognized that Pritzlaff had no physical evidence to prove the coercive nature of the relationship, and observed that " '[w]hile some courts may have blind faith in all phases of psychiatry, this court does not.' " *Id.* (quoting *Steele v. State,* 97 Wis. 2d 72, 97, 294 N.W.2d 2 (1980)). In light of the lack of physical evidence and the extended period between the alleged wrongful acts and the lawsuit, "allowing what could be meritorious claims of this nature does not outweigh the threat of stale or fraudulent actions." *Id.* at 323.

¶ 30. The *Pritzlaff* court also held that the plaintiff's potential claims against the Archdiocese were barred. *Id.* at 330. The court recognized that at the time, it had not yet recognized the tort of "negligent

supervision." *Id.* Nevertheless, the court held that even if such a claim existed, it would be barred by the First Amendment's establishment clause.[7] *Id.*

¶ 31. Doe's arguments addressing *BBB Doe* and *Pritzlaff* have not been consistent. At oral argument, Doe's counsel advised the court that we would have to overrule one or both of these cases in order to hold in Doe's favor. In his briefs, however, Doe argues that both of these cases are simply not applicable. Doe argues that *BBB Doe* is distinguishable for several reasons. First, Doe argues that the principal holding of *BBB Doe* concerns a cause of action against the perpetrator, not the Archdiocese. Second, Doe argues that his claims against the Archdiocese are not derivative claims; they are direct claims against the Archdiocese for its own wrongful conduct. Third, Doe argues that because Wisconsin did not recognize the tort of negligent supervision by an employer at the time we decided *BBB Doe,* any language dismissing such a claim in that case is mere dicta. Doe argues that the *BBB Doe* court's reliance on *Pritzlaff* was misplaced because *Pritzlaff* concerned an adult victim, not a child. Finally, he argues that the discovery rule preserves all his direct claims against the Archdiocese because those claims did not accrue until the Archdiocese revealed its allegedly wrongful conduct in 2002.

¶ 32. For its part, the Archdiocese argues that our holdings in *BBB Doe* and *Pritzlaff* effectively bar Doe's claims here because those cases establish that the

---

[7] The interplay between the First Amendment and the Archdiocese's supervision of its priests was discussed extensively in *L.L.N. v. Clauder,* 209 Wis. 2d 674, 563 N.W.2d 434 (1997). Doe argues that our holding in *Clauder* is distinguishable, or alternatively, that we should overrule *Clauder.* Given our holding in this case, we need not address the issue.

statute of limitations for derivative liability claims expires at the same time as the underlying tort claims. Additionally, the Archdiocese argues that our recognition of the negligent supervision tort in *Miller v. Wal-Mart Stores, Inc.,* 219 Wis. 2d 250, 267–68, 580 N.W.2d 233 (1998), should not be retroactively applied to its conduct in the 1960s. Finally, the Archdiocese argues that this state's public policy against stale claims should preclude Doe's suit.[8] *See BBB Doe,* 211 Wis. 2d at 365; *Pritzlaff,* 194 Wis. 2d at 322.

C. Sufficiency of Doe's Complaint

¶ 33. Before we consider the parties' competing arguments regarding *BBB Doe, Pritzlaff,* and *Clauder,* we must test the legal sufficiency of Doe's complaint.

¶ 34. We must decide whether Doe has alleged facts sufficient to support the three causes of action stated in his complaint: negligence, fiduciary fraud, and breach of fiduciary duty.

¶ 35. In 1975 this court adopted new rules of Wisconsin civil procedure. 67 Wis. 2d 585 (1975). One of the "keystones of the new procedural system" was Wis. Stat. § 802.02 (1977–78), which signaled Wisconsin's adoption of "notice pleading." *Wilson v. Cont'l Ins. Cos.,* 87 Wis. 2d 310, 316, 274 N.W.2d 679 (1979); Clausen, *The New Wisconsin Rules of Civil Procedure* at 37.

---

[8] The Archdiocese asks us to recognize the public policy evident in the legislature's recent enactment of Wis. Stat. § 895.71, "Sexual exploitation by a member of the clergy." Specifically, § 895.71(4) states that "An action under this section is subject to s. 893.587." Section 893.587, which is in effect a statute of repose, provides that such actions "shall be commenced before the injured party reaches the age of 35 years or be barred." This statute did not take effect until May 2004, and therefore we need not consider its applicability to this case.

Under § 802.02(1)(a), a complaint must simply contain "[a] short and plain statement of the claim, identifying the transaction or occurrence or series of transactions or occurrences out of which the claim arises and showing that the pleader is entitled to relief." These claims are to be liberally "construed [so] as to do substantial justice." Wis. Stat. § 802.02(6); *Prah*, 108 Wis. 2d at 229.

¶ 36. However, a complaint cannot be completely devoid of factual allegations. The notice pleading rule, while "intended to eliminate many technical requirements of pleading," nevertheless requires the plaintiff to set forth "a statement of circumstances, occurrences and events in support of the claim presented." Clausen, *The New Wisconsin Rules of Civil Procedure* at 38–39. For example, "a claim in negligence must state general facts setting forth that the [defendant] had knowledge or should have had knowledge of a potential and unreasonable risk . . . ." *Wilson*, 87 Wis. 2d at 318. "[A] bare conclusion [does] not fulfill[] a plaintiff's duty of stating the elements of a claim in general terms." *Id.* at 319. In short, we will dismiss a complaint if, "[u]nder the guise of notice pleading, the complaint before us requires the court to indulge in too much speculation leaving too much to the imagination of the court." *Id.* at 326–27. It is not enough for the plaintiff to contend that the requisite facts will be "supplied by the discovery process." *Id.* at 327.

¶ 37. Accordingly, the first step in our analysis is an examination of the allegations in Doe's complaint to determine whether the alleged facts are sufficient or whether they leave "too much to the imagination of the court." One of the grounds for the Archdiocese's motion to dismiss was that the complaint did not allege that the Archdiocese had knowledge about Nuedling as of 1960.

¶ 38. Reviewing Doe's pleadings, we find the following allegations relating to the date of the Archdiocese's knowledge:

9. On information and belief, Defendants knew or should have known of Nuedling's problems with alcohol abuse as well as his tendency and history of sexually abusing children. Despite this Defendants Diocese and Church continued to allow Nuedling to have unsupervised contact with children.

10. On information and belief, in approximately 1980 an agent of Defendant Diocese witnessed Nuedling sexually abusing a boy in the sacristy of St. John the Evangelist Church.

11. On information and belief, in November of 1986 a man reported to Defendant Diocese that he was abused when he was a boy by Nuedling.

12. On information and belief, in approximately 1987 Nuedling admitted abusing a boy at St. Rita. Despite the report to Defendant Diocese and Nuedling's own admission of sexual abuse, Defendant Diocese allowed Nuedling to continue serving as a priest.

13. On information and belief, in March of 1993 another man reported to Defendant Diocese that he was abused by Nuedling when he was a boy.

14. On information and belief, Defendant Diocese received additional reports of abuse by three different men in July of 2001, March of 2002 and May of 2002.

15. Despite these numerous reports of abuse Defendants Diocese and Church failed to disclose information regarding Nuedling's abusive propensities until recently.

. . . .

330

23. Defendants Diocese and Church knew or should reasonabl[y] have known of Nuedling's dangerous and exploitative propensities as a child sexual exploiter and/or as an unfit agent and despite such knowledge, Defendants Diocese and Church negligently retained and failed to provide reasonable supervision of Nuedling.

. . . .

30. On information and belief, Defendants Diocese and Church had actual or constructive knowledge of Nuedling's inappropriate behavior, as discussed above.

31. Defendants Diocese and Church misrepresented, concealed and/or failed to disclose information relating to sexual misconduct, and other inappropriate behavior of Nuedling.

¶ 39. None of these paragraphs alleges that the Archdiocese knew of Doe's proclivities *as of 1960–62.* Paragraph 9 alleges that the Archdiocese "knew or should have known" without giving a date. The vague and general allegations in paragraph 9 are grounded in the facts set forth in subsequent paragraphs describing incidents that occurred between 1980 and 2002. Paragraphs 23, 30, and 31 similarly contain no allegation relating the date of the Archdiocese's knowledge.

¶ 40. At oral argument before this court, Doe's counsel reiterated the allegation that the Archdiocese had knowledge as of 1980. Counsel acknowledged that Doe had not specifically pleaded an allegation that the Archdiocese knew as of 1960, and asked us to assume prior knowledge based on the Archdiocese's recent revelations. In effect, counsel argued that the nonspecific allegations of paragraph 9, "knew or should have known," are enough to sustain Doe's claim.

¶ 41. These arguments echo the allegations Doe's counsel made before the circuit court regarding the date of the Archdiocese's knowledge of Nuedling's proclivities. *See supra* ¶¶ 13–14 (The Archdiocese, he said, had known about Nuedling "for twenty or more years" and had failed to disclose "this information."). Doe has never specifically alleged, in his complaint before the circuit court, in his argument before the circuit court, in his brief to this court, or in his oral argument before this court, that the Archdiocese knew about Nuedling's misconduct in 1960–62, or had a basis for such knowledge before 1980.

¶ 42. With this understanding, we examine the elements of each of the causes of action Doe alleged, to determine whether any of them may proceed despite Doe's failure to allege that the Archdiocese had knowledge at the time of the events in question.

1. Negligence

■

¶ 43. In the abstract, a plaintiff alleging "negligence" must show four elements: "(1) A duty of care on the part of the defendant; (2) a breach of that duty; (3) a causal connection between the conduct and the injury; and (4) an actual loss or damage as a result of the injury." *Miller,* 219 Wis.2d at 260 (citing *Rockweit v. Senecal,* 197 Wis. 2d 409, 418, 541 N.W.2d 742 (1995)). We do not understand Doe to accuse the Archdiocese of "negligence" in this broad sense. Rather, Doe alleges the more specific tort of "negligent supervision," which we recognized in 1998. To state a claim for negligent supervision

> the plaintiff must show that the employer has a duty of care, that the employer breached that duty, that the act or omission of the employee was a cause-in-fact of the

plaintiff's injury, and that the act or omission of the employer was a cause-in-fact of the wrongful act of the employee.

*Miller,* 219 Wis. 2d at 267–68.

¶ 44. In sum, for a plaintiff to succeed in a negligent supervision claim, the jury must find a causal connection between the employer's negligence and the employee's wrongful act. *Id.* at 264.

¶ 45. We now compare Doe's complaint to the elements of this cause of action to determine whether it sufficiently alleges supporting facts. For Doe to succeed on his claim of negligent supervision, Doe would have to prove at trial that the Archdiocese's conduct was a "cause-in-fact of the wrongful act of the employee." *Miller,* 219 Wis. 2d at 267–68. In other words, Doe's complaint must "state general *facts* setting forth that the [defendant] had knowledge or should have had knowledge of a potential and unreasonable risk . . . ." *Wilson,* 87 Wis. 2d at 318 (emphasis added). If Doe's complaint did not "state general facts setting forth" that the Archdiocese knew or should have known of Nuedling's problems *at the time of the abuse,* then it would be impossible to conclude that its supervision was a "cause-in-fact" of the abuse.

¶ 46. Doe did not allege any *facts* showing the Archdiocese's knowledge before 1980; the allegations in paragraph 9 of the complaint are "bare conclusion[s]" not sufficient to sustain the complaint. Doe has not alleged "facts setting forth that the [defendant] had knowledge or should have had knowledge of a potential and unreasonable risk" posed by Nuedling at the time of Doe 67F's alleged abuse. *See Wilson,* 87 Wis. 2d at 318.

333

For the purposes of this analysis, we cannot permit Doe to rely on hypothetical, speculative "facts" that might or might not be supplied by the discovery process. *Id.* at 327. Therefore, Doe's complaint insufficiently pleaded Doe's negligence cause of action. Given the allegations in the complaint, Doe could not recover for negligent supervision under any set of circumstances.

2. "Fiduciary Fraud"

¶ 47. Doe's complaint artfully blends elements of his second and third causes of action. He alleges in his claim of "fiduciary fraud" that:

> 31. Defendants Diocese and Church misrepresented, concealed and/or failed to disclose information relating to sexual misconduct, and other inappropriate behavior of Nuedling.

¶ 48. "Fiduciary fraud" has not been recognized as a separate tort in Wisconsin, and it is not entirely clear what the elements of such a tort would be that would make it different from "fraud" or "breach of fiduciary duty."

¶ 49. "Fraud consists of a purposeful, volitional act on the part of the defrauding party." *Putnam v. Time Warner Cable,* 2002 WI 108, ¶ 27, 255 Wis. 2d 447, 649 N.W.2d 626 (citing *Black's Law Dictionary* 670 (7th ed. 1999)). As a general rule, a "misrepresentation" is required to support a claim of fraud. *Mackenzie v. Miller Brewing Co.,* 2001 WI 23, ¶ 18, 241 Wis. 2d 700, 623 N.W.2d 739. "The general rule is that silence, a failure to disclose a fact, is not misrepresentation unless the nondisclosing party has a duty to disclose that fact." *Lecic v. Lane Co.,* 104 Wis.2d 592, 604, 312 N.W.2d 773 (1981).

¶ 50. If a fiduciary relationship exists between the parties,[9] however, the failure to disclose may be actionable as both an intentional misrepresentation (fraud)[10] and a breach of fiduciary duty. For the purposes of analyzing the Archdiocese's motion to dismiss, we will assume without deciding that a fiduciary relationship existed.[11] Using this analytic framework, we will separately analyze Doe's allegations that the Archdiocese misrepresented its knowledge (which we will denominate Doe's fraud cause of action)[12] and Doe's allegations

[9] The issue of whether Doe and the Archdiocese have a fiduciary relationship is an open question. Although similar claims were raised in *John BBB Doe v. Archdiocese of Milwaukee*, 211 Wis. 2d 312, 565 N.W.2d 94 (1997), and *Clauder*, we did not reach their merits. Other jurisdictions are divided on the issue. *See* 1 Dan B. Dobbs, *The Law of Torts* § 258, at 688 (West 2001).

[10] Doe alleges that "Defendants knew that they misrepresented, concealed, and/or failed to disclose information relating to sexual misconduct and other inappropriate behavior of Nuedling." We therefore liberally construe this claim as alleging *intentional* misrepresentation, as "[w]e use 'intentional misrepresentation,' and 'fraudulent misrepresentation,' and 'fraud' interchangeably." *Jadowski*, 272 Wis. 2d 418, ¶ 1 n.2.

[11] This is a legal conclusion. Therefore, we are not bound to assume that a fiduciary relationship existed. *See Morgan v. Pa. Gen. Ins. Co.*, 87 Wis. 2d 723, 731, 275 N.W.2d 660 (1979). Our holding rests on the fact that Doe did not assert any facts indicating that the Archdiocese had knowledge of Nuedling's proclivities as of 1960–62. This conclusion would hold regardless of whether a fiduciary relationship existed, and therefore we may assume without deciding that one did.

[12] In his brief, Doe cites conventional fraud cases such as *Mackenzie v. Miller Brewing Co.*, 2001 WI 23, 241 Wis. 2d 700, 623 N.W.2d 739, which did not involve a fiduciary relationship.

that the Archdiocese concealed and/or failed to disclose its knowledge (which we will denominate Doe's breach of fiduciary duty cause of action). If either of these claims survives the Archdiocese's motion to dismiss, we must reverse the circuit court's order.

¶ 51. According to *Mackenzie,* in order to survive the motion to dismiss, the portion of Doe's complaint alleging "fiduciary fraud" must therefore allege "(1) false representation; (2) intent to defraud; (3) reliance upon the false representation; and (4) damages." *Mackenzie,* 241 Wis. 2d 700, ¶ 18.

■■■■■

¶ 52. Special rules of pleading apply to fraud claims. Wis. Stat. § 802.03(2) ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."). Pleading with "particularity" means that the plaintiff's allegations must specify "the particular individuals who made the representations [and] the details of where and when the misrepresentations were made, and who the misrepresentations were made to." *Friends of Kenwood v. Green,* 2000 WI App 217, ¶ 16, 239 Wis. 2d 78, 619 N.W.2d 271. "This detailed pleading protects persons from casual allegations of serious wrongdoing and puts defendants on notice 'so that they may prepare meaningful responses to the claim.'" *Putnam,* 255 Wis. 2d 447, ¶ 26 (quoting *Rendler v. Markos,* 154 Wis. 2d 420, 428, 453 N.W.2d 202 (Ct. App. 1990)).

■■■■

¶ 53. Doe's pleading does not satisfy this requirement. Nothing in the complaint identifies particular individuals who made misrepresentations, the date of the misrepresentations, or the details of the misrepresentations. Further, we note that if the Archdiocese had no knowledge of Nuedling's problem until after the time

of the alleged abuse, then any misrepresentations it made could not have been intentional. Accordingly, Doe's fraud claim based on affirmative misrepresentations must also be dismissed.

¶ 54. Doe's allegations that the Archdiocese concealed or failed to disclose its knowledge are the substance of Doe's third cause of action.

3. Breach of Fiduciary Duty

¶ 55. "A fiduciary relationship arises from a formal commitment to act for the benefit of another . . . or from special circumstances from which the law will assume an obligation to act for another's benefit." *Merrill Lynch v. Boeck,* 127 Wis. 2d 127, 136, 377 N.W.2d 605 (1985). In determining whether a fiduciary relationship has arisen, courts consider a variety of factors, including whether there is dependence and inequality based on weakness of age or mental strength, lack of business intelligence, inferior knowledge of facts involved, or other conditions giving one side an advantage over the other. *Prod. Credit Ass'n of Lancaster v. Croft,* 143 Wis. 2d 746, 755–56, 423 N.W.2d 544 (Ct. App. 1988). The Archdiocese has not conceded that it owed a fiduciary duty to Doe, and we need not assume that legal conclusion. *Morgan,* 87 Wis. 2d at 731. However, for the purposes of this analysis we will assume without deciding that a fiduciary relationship existed.

¶ 56. Doe's breach of fiduciary duty claim alleges that the Archdiocese concealed information regarding Nuedling's proclivities. An affirmative duty of disclosure of material facts is imposed when the defendant

owes a fiduciary duty to the plaintiff. 2 Dan B. Dobbs, *The Law of Torts* § 481, at 1375 (West 2001). We accept this fundamental principle. However, if the Archdiocese did not possess such information at the time of the alleged abuse, then by definition it could not conceal it. Therefore, to sustain this claim, Doe must have alleged that the Archdiocese knew or should have known the material information as of 1960. He has not. Accordingly, this cause of action also must fail.

## IV. CONCLUSION

¶ 57. We conclude that Doe has not alleged that the Archdiocese knew that Nuedling had a problem as of 1960. Such knowledge is essential to all three causes of action Doe raised against the Archdiocese. To make any of Doe's claims viable, we would have to add an unpleaded fact, ascribing knowledge to the Archdiocese "as of 1960," to paragraphs 9, 23, 30, and 31 of the complaint and have some basis for doing so. This we cannot do. *See* Grenig, *Civil Procedure* § 206.11 at 304. We therefore conclude that none of Doe's claims is properly pleaded.

¶ 58. It is "quite clear" that Doe's pleadings fail to state a claim on which relief could be granted, *see* Wis. Stat. § 802.06(2)(a)6, and we affirm the decision of the court of appeals. Given our decision that Doe's claim fails on the pleadings, we need not address the Archdiocese's arguments rooted in the statute of limitations, public policy, or the First Amendment.[13]

---

[13] We note in passing that this court did not abolish the doctrine of charitable immunity until 1961. *See Kojis v. Doctors Hosp.*, 12 Wis. 2d 367, 372, 107 N.W.2d 131 (1961). Two years later, we clarified that "the new rule abolishing immunity of

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 59. ANN WALSH BRADLEY, J. *(concurring)*. We have previously determined that negligent supervision claims against a religious body are barred in Wisconsin by the Establishment Clause of the First Amendment because of the threat of excessive entanglement between government and religion. *L.L.N. v. Clauder,* 209 Wis. 2d 674, 686–98, 563 N.W.2d 434 (1997); *Pritzlaff v. Archdiocese of Milwaukee,* 194 Wis. 2d 302, 325–331, 533 N.W.2d 780 (1995). We have also previously concluded that the discovery rule does not save intentional sexual assault claims in priest abuse cases from the applicable statute of limitations. *BBB Doe v. Archdiocese,* 211 Wis. 2d 312, 366, 565 N.W.2d 94 (1997).

¶ 60. The issues of the Establishment Clause and the discovery rule are again before us, but in a different context. Our prior cases can be readily distinguished from the allegations made here.

¶ 61. The petition for review in this case sets forth two questions: (1) Whether a review of the Archdiocese's conduct for negligence, breach of fiduciary duty, or fraud would require the court to become "excessively entangled" in solely ecclesiastical matters in violation of the Establishment Clause of the First Amendment to the U.S. Constitution; and (2) Whether the discovery rule applies to save the plaintiff's claims against the defendants from the bar of the statute of limitations.

religious institutions for negligence [is] prospective to July 1, 1963." *Widell v. Holy Trinity Catholic Church,* 19 Wis. 2d 648, 657, 121 N.W.2d 249 (1963) (citing *Kojis*). The alleged abuse in this case occurred between 1960 and 1962.

¶ 62. Instead of answering the questions, however, the majority dodges them. It decides this case in an error correcting fashion based on the sufficiency of particular allegations in an individual complaint.[1]

¶ 63. As a result, the questions in this context remain open. I believe that the court should have answered them because they were fully briefed and argued. For the benefit of the lower courts and future litigants, I address the questions left unanswered by the majority.

## I.

¶ 64. The First Amendment to the United States Constitution provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . " U.S. Const. Amend. 1. This constitutional guarantee is made applicable to the states through the Fourteenth Amendment. *See Santa Fe Indep. Sch. Dist. v. Doe,* 530 U.S. 290, 301 (2000); *Capitol Square Review & Advisory Bd. v. Pinette,* 515 U.S. 753, 757 (1995).

¶ 65. The Establishment Clause of the First Amendment involves the separation of church and state and prohibits the government from enacting laws that "aid one religion, aid all religions, or prefer one religion over another." *Abington Sch. Dist. v. Schempp,* 374 U.S. 203, 216 (1963) (quoting *Everson v. Bd. of Educ.,* 330 U.S. 1, 15 (1947)). Although different in purpose than the Free Exercise Clause, the Establishment Clause

---

[1] The court of appeals' primary function is error correcting. *Cook v. Cook,* 208 Wis. 2d 166, 188, 560 N.W.2d 246 (1997). By contrast, this court's primary function is that of law defining and law development. *Id.* at 189.

shares the concept of neutrality as one of its central principles. *Clauder,* 209 Wis. 2d at 687 n. 11.

¶ 66. In *Lemon v. Kurtzman,* the U.S. Supreme Court articulated a three-part test to determine whether a neutral law violates the Establishment Clause: (1) the law must have a secular purpose; (2) the primary or principal effect of the law must neither advance nor inhibit religion; and (3) the law must not foster an excessive government entanglement with religion. 403 U.S. 602, 612 (1971).[2] There is no question that the tort laws at issue satisfy the first two prongs of *Lemon.* Thus, the analysis necessarily centers on its third prong.

¶ 67. In this case, there is no threat of excessive entanglement between government and religion. After all, Doe is not asking the judicial branch to interpret church canons, church polices, or church practices in order to resolve this case. Rather, he is asking it to help ascertain, through neutral tort principles, whether the church-employer took the necessary steps to prevent foreseeable harm to children. This task is not beyond the capabilities of the courts. Employers, including religious employers, must be subject to such laws if our children are to be made safe.

¶ 68. Nevertheless, the court of appeals here concluded that negligent supervision claims against a religious body are barred in Wisconsin by the Establish-

---

[2] Several U.S. Supreme Court Justices have expressed dissatisfaction with the *Lemon* test, advocating alternative frameworks. *See, e.g., Lee v. Weisman,* 505 U.S. 577 (1992) (advocating and applying a coercion test); *Lynch v. Donnelly,* 465 U.S. 668, 691 (1984) (O'Connor, J., concurring) (advocating adoption of an endorsement test). Until the Supreme Court reaches a consensus on its successor, however, *Lemon* remains a viable test.

ment Clause of the First Amendment.[3] *Doe v. Archdiocese,* Nos. 03–1416, 03–1417, unpublished slip op., ¶ 6 (Wis. Ct. App. July 30, 2004) (citing *Pritzlaff,* 194 Wis. 2d at 325–31; *Clauder,* 209 Wis. 2d at 686–98). It further determined that *Pritzlaff* and *Clauder* implicitly barred Doe's claims of breach of fiduciary duty and fraud. *Id.* I conclude that the court of appeals' reliance on *Pritzlaff* and *Clauder* is misplaced.

---

[3] Such a conclusion would put Wisconsin in a distinct and diminishing minority. Recently, the Florida Supreme Court joined the "majority of both state and federal jurisdictions that have found no First Amendment bar under similar circumstances." *See Malicki v. Doe,* 814 So. 2d 347, 351 (Fla. 2002) (citing *Bear Valley Church of Christ v. Debose,* 928 P.2d 1315, 1323 (Colo. 1996); *Moses v. Diocese of Colorado,* 863 P.2d 310, 314–15 (Colo. 1993); *Destefano v. Grabrian,* 763 P.2d 275, 283–88 (Colo. 1988); *Amato v. Greenquist,* 679 N.E.2d 446, 450, 454 (Ill. Ct. App. 1997); *Bivin v. Wright,* 656 N.E.2d 1121, 1124–25 (Ill. Ct. App. 1995); *Konkle v. Henson,* 672 N.E.2d 450, 456 (Ind. Ct. App. 1996); *Mrozka v. Archdiocese of St. Paul and Minneapolis,* 482 N.W.2d 806, 812 (Minn. Ct. App. 1992); *F.G. v. MacDonell,* 696 A.2d 697, 702–03 (N.J. 1997); *Kenneth R. v. Roman Catholic Diocese of Brooklyn,* 654 N.Y.S.2d 791, 795–96 (1997); *Smith v. Privette,* 495 S.E.2d 395, 398 (N.C. Ct. App. 1998); *Byrd v. Faber,* 565 N.E.2d 584, 589 (Oh. 1991); *Erickson v. Christenson,* 781 P.2d 383, 386 (Or. Ct. App. 1989); *Martinez v. Primera Asemblea de Dios, Inc.,* No. 05–96–01458, 1998 WL 242412, at *3 (Tex. Ct. App. May 15, 1998); *C.J.C. v. Corporation of the Catholic Bishop of Yakima,* 985 P.2d 262, 277 (Wash. 1999); *Martinelli v. Bridgeport Roman Catholic Diocesan,* 196 F.3d 409 (2d Cir. 1999); *Smith v. O'Connell,* 986 F. Supp. 73, 80 (D.R.I. 1997); *Doe v. Hartz,* 970 F. Supp. 1375, 1431–32 (N.D. Iowa 1997), *rev'd on other grounds,* 134 F.3d 1339 (8th Cir. 1998); *Sanders v. Casa View Baptist Church,* 898 F. Supp. 1169, 1175 (N.D. Tex. 1995), *aff'd,* 134 F.3d 331 (5th Cir. 1998); *Nutt v. Norwich Roman Catholic Diocese,* 921 F.Supp. 66 (D. Conn. 1995); *Isely v. Capuchin Province,* 880 F. Supp. 1138, 1151 (E.D. Mich. 1995)).

¶ 69. The facts in both *Pritzlaff* and *Clauder* are readily distinguishable from the case at hand. In those cases, this court considered a claim that the church negligently hired and retained a priest who engaged in consensual sexual conduct with an adult woman. *See Pritzlaff,* 194 Wis. 2d at 307–08; *Clauder,* 209 Wis. 2d at 679. The harm at issue would have required consideration and interpretation of church doctrines, including the vow of celibacy. *See Pritzlaff,* 194 Wis. 2d at 310; *Clauder,* 209 Wis. 2d at 696.

¶ 70. By contrast, the harm alleged in the present case involved criminal sexual assault against a minor child. Such facts do not warrant examination of church doctrine. Indeed, this court in *Clauder* contemplated that such an action would survive a constitutional challenge. Quoting with approval *Roppolo v. Moore,* 644 So. 2d 206, 208 (La. Ct. App. 1994), we stated: "This is a secular court. If sexual or other conduct of a priest violates secular standards, *e.g., child molestation,* this Court will impose whatever civil or criminal secular sanctions may be appropriate." *Clauder,* 209 Wis. 2d at 696 (emphasis added).

¶ 71. This court should not allow church officials to be beyond reproach of the law. As one court has recently warned, "to hold otherwise and immunize the Church Defendants could risk placing religious institutions in a preferred position over secular institutions, a concept both foreign and hostile to the First Amendment." *Malicki v. Doe,* 814 So. 2d 347, 365 (Fla. 2002)

¶ 72. I conclude these allegations emanating from alleged child sexual assault pose no threat of excessive entanglement between government and religion. The Establishment Clause of the First Amendment is not a bar here because secular, not religious, standards are implicated. As the *Clauder* court instructed: if con-

343

duct violates secular standards, this court will provide criminal sanctions and civil remedies as appropriate. 209 Wis. 2d at 696. Accordingly, I would hold that in the context of cases involving child sexual assault, the Establishment Clause does not bar plaintiffs from pursuing these secular actions.

## II.

¶ 73. Having addressed the First Amendment issue, I turn next to the Archdiocese's statute of limitations defense. In this case, the Archdiocese maintains that all of Doe's claims are barred by the applicable statute of limitations. Doe, meanwhile, asserts that the limitations period relevant to his claims was tolled until he discovered the nature of his claim and the cause of his injury. He asserts that the "discovery rule" that we recognized in *Hansen v. A.H. Robins Co.,* 113 Wis. 2d 550, 335 N.W.2d 578 (1983), applies to save his claim from the bar of the statute of limitations.

¶ 74. "In the interest of justice and fundamental fairness," the *Hansen* court held that tort claims "shall accrue on the date the injury is discovered or with reasonable diligence should be discovered, whichever occurs first." *Id.* at 560. The cause of injury does not accrue until the plaintiff discovers both the nature of his claim and the cause of his injury. *Pritzlaff,* 194 Wis. 2d at 314–15 (citing *Borello v. United States Oil Co.,* 130 Wis. 2d 397, 406–07, 388 N.W.2d 140 (1986)).

¶ 75. Here, the court of appeals resolved the statute of limitations dispute in favor of the Archdiocese. Relying on *BBB Doe,* 211 Wis. 2d 312, it concluded that any derivative claim against the Archdiocese, because it is derivative, accrued at the same time the underlying intentional tort claims accrued. *Doe v. Archdiocese,*

unpublished slip op. at ¶ 4. Additionally, it observed that to the extent the plaintiff asserted any direct claims against the Archdiocese, those claims also would be tied to the accrual date of the underlying intentional tort of the perpetrator. *Id.* at ¶ 5. The court of appeals errs when it concludes that *BBB Doe* foreordains the result here.

¶ 76. Like *Pritzlaff* and *Clauder, BBB Doe* can be distinguished from the case at hand. The analysis of the court in *BBB Doe* focused on the claim against the perpetrator, not the Archdiocese. The court stated that it was not addressing the negligent employment claims against the Archdiocese and assumed that all claims against the Archdiocese were derivative. *BBB Doe,* 211 Wis. 2d at 366.

¶ 77. Subsequent to *BBB Doe,* the law of negligent employment theories has evolved. This court in *Miller v. Wal-Mart Stores, Inc.* recognized the tort of negligent hiring, retention, and supervision. 219 Wis. 2d 250, 580 N.W.2d 233 (1998). Also subsequent to *BBB Doe,* the nature of such claims has been clarified. This court has acknowledged that these claims are not derivative. Rather, the claims against the Archdiocese here are independent and direct.

¶ 78. In *Doyle v. Engelke,* we determined, "While negligent supervision does require an underlying wrong to be committed by the employee as an element, the tort actually focuses on the tortious, i.e. negligent, conduct of the employer." 219 Wis. 2d 277, 291 n. 6, 580 N.W.2d 245 (1998). Likewise, in *Clauder,* we observed that in a cause of action for negligent supervision, "liability does not result solely because of the relationship of the employer and employee, but instead because of the independent negligence of the employer." 209 Wis. 2d at 699. Because these claims are no longer considered

derivative, the underlying rationale for tying the accrual date of the claim against the Archdiocese to the accrual date of the intentional tort of the perpetrator no longer applies.

¶ 79. In addition, our discovery rule jurisprudence has evolved since *BBB Doe* was decided. Two years after the *BBB Doe* decision, this court addressed the application of the discovery rule in the context of false allegations of sexual abuse.

¶ 80. In *Sawyer v. Midelfort,* the plaintiffs sued for injuries they sustained in 1985, when they alleged that their daughter made false allegations that her parents sexually abused her. 227 Wis. 2d 124, 595 N.W.2d 423 (1999). The plaintiffs did not file their suit alleging negligence against the therapist until 1996 when they obtained access to their then deceased daughter's therapy records, which reflected a form of therapy known as repressed memory therapy. The plaintiffs claimed that they did not know that the therapy was the cause of their daughter's false memories and their resulting injuries until they obtained the records. The defendants argued that the plaintiffs' claim was barred by Wis. Stat. § 893.54, the three-year statute of limitations governing injury to the person.

¶ 81. In addressing the statute of limitations issue, the *Sawyer* court acknowledged that the *Hansen* discovery rule could be applied to benefit claims involving false allegations of sexual abuse. *Id.* at 155–56. Ultimately, the court concluded that it could not state as a matter of law that the Sawyers failed to exercise reasonable diligence in discovering the cause of their injury. *Id.* at 158. Accordingly, it remanded the matter to the circuit court for further fact-finding consistent with the discovery rule. *Id.*

¶ 82. In contrast to the *Sawyer* case, actual sexual abuse is alleged here. It makes no sense to apply the discovery rule in cases involving *false* allegations of sexual abuse, but to deny its benefit in cases involving allegations of *actual* sexual abuse. Such a distinction would be without a principled difference. The benefit of the discovery rule should be applied to both.

¶ 83. Because Doe's independent, direct claims against the Archdiocese involve different elements from any potential cause of action against Father Nuedling's estate, the discovery rule may still benefit Doe's claims even when the underlying claim against the perpetrator has already been time barred. As counsel for Doe explained at oral argument, the allegations in this case "do not arise out of the moment of the sexual attack. They arise out of the secrecy of the Archdiocese, which we only could learn about as of 2002."

¶ 84. Although the court of appeals suggests that Doe should have suspected the Archdiocese's role in the abuse sooner, there was no reason for him to do so. Until the priest abuse scandals gained national attention, most victims had no basis for believing that the institutional church was involved. Many of the child victims apparently believed that they were the only ones who were sexually abused. Information regarding the number of additional victims and the Archdiocese's role in perpetuating child abuse would be in the exclusive possession of the Archdiocese.

¶ 85. Failure to recognize the application of the discovery rule places Wisconsin victims of child molestation in an anomalous situation. Courts in other states have allowed claims of similarly situated child victims of clergy abuse to proceed against the Archdiocese of Milwaukee. *See e.g., The Archdiocese of Milwaukee v. Superior Court of Orange County,* 5 Cal. Rptr. 3d 154

(2003); *cert. denied,* 124 S. Ct. 2874; *Delonga v. Diocese of Sioux Falls, et al,* 329 F. Supp. 2d 1092 (2004).

¶ 86. In *Delonga,* the plaintiff brought an action in a federal district court in South Dakota against the Archdiocese of Milwaukee and others. She alleged that between 1965 and 1970 she was regularly and repeatedly sexually abused by a priest of the Diocese of Sioux Falls while he was serving on assignment as a priest in the Milwaukee Archdiocese. Letters between the Bishops revealed that both were aware of the priest's past conduct of child molestation. In a letter dated February 28, 1965, the Bishop of Sioux Falls wrote to the Archdiocese of Milwaukee, asking "for any help you can give me and Father MacArthur in our present dilemma" and asked if an assignment could be found for him in the Milwaukee area. *Id.* at 1094.

¶ 87. The plaintiff alleged in her complaint that despite her exercise of due diligence, she was prevented from discovering her causes of action because of the defendant Dioceses' fraudulent concealment and representations about Father MacArthur. The defendants contended that the plaintiff's claims were timed barred. The *Delonga* court, applying the discovery rule, allowed the plaintiff to proceed. *Id.* at 1104.

¶ 88. I am mindful of the policy concerns against allowing Doe's claim here. Yet, it is Doe who carries the burden of proof. While the passage of time may make his claims more difficult to prove, for the reasons stated above, he should not be barred from his opportunity to do so. Accordingly, I would hold that the discovery rule applies to save the plaintiff's claims against the defendants from the bar of the statute of limitations.

### III.

¶ 89. In the end, the majority wastes a golden opportunity today to provide much needed guidance to this area of law regarding the Establishment Clause and the discovery rule. Because I believe that this court, in its law development capacity, should have reached these issues and concluded that they do not bar the plaintiff's claims, I respectfully concur.

¶ 90. I am authorized to state that Chief Justice SHIRLEY S. ABRAHAMSON joins this concurrence, and Justice PATIENCE DRAKE ROGGENSACK joins Part I of this concurrence.

¶ 91. LOUIS B. BUTLER, JR., J. (*concurring*). I join the majority opinion. The majority correctly concludes that Doe does not allege that the Archdiocese knew that Nuedling had a problem as of 1960, and that such knowledge is essential to all three causes of action Doe raised against the Archdiocese. Majority op., ¶ 57. Because of that conclusion, we have explicitly declined to address the Archdiocese's arguments rooted in the statute of limitations, public policy, or the First Amendment. *Id.*, ¶ 58. We do not normally decide constitutional questions if the case can be resolved on other grounds. *State v. Hale*, 2005 WI 7, ¶ 42, 277 Wis. 2d 593, 691 N.W.2d 637; *Labor & Farm Party v. Elections Bd.*, 117 Wis. 2d 351, 354, 344 N.W.2d 177 (1984). As such, these questions have not been resolved, and will have to be addressed in possible future litigation.

¶ 92. I am authorized to state that Justice N. PATRICK CROOKS joins this concurring opinion.