**2023 WI APP 24**

# COURT OF APPEALS OF WISCONSIN
# PUBLISHED OPINION

Case No.: 2021AP989

Complete Title of Case:

DAVID ENZ, ROSEMARY ENZ, DARREN ASHLEY AND SUSAN ASHLEY,

PLAINTIFFS-APPELLANTS,

V.

DUKE ENERGY RENEWABLE SERVICES, INC., A DELAWARE LIMITED
LIABILITY COMPANY AND SHIRLEY WIND LLC,

DEFENDANTS-RESPONDENTS.

| | |
|---|---|
| Opinion Filed: | April 4, 2023 |
| Submitted on Briefs: | January 11, 2022 |
| Oral Argument: | |

| | |
|---|---|
| JUDGES: | Stark, P.J., Hruz and Gill, JJ. |
| Concurred: | |
| Dissented: | |

| | |
|---|---|
| Appellant ATTORNEYS: | On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Thomas R. Schrimpf* of *Hinshaw and Culbertson LLP*. |
| Respondent ATTORNEYS: | On behalf of the defendants-respondents, the cause was submitted on the brief of *Edward B. Ruff III, James A. LaBarge (pro hac vice)* and *Scott L. Howie (pro hac vice)* of *Pretzel & Stouffer Chartered*, Chicago, Illinois, and *Emery K. Harlan* of *MWH Law Group, LLP*, Milwaukee. |

COURT OF APPEALS
DECISION
DATED AND FILED

April 4, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP989**

STATE OF WISCONSIN

Cir. Ct. No. 2020CV448

IN COURT OF APPEALS

---

DAVID ENZ, ROSEMARY ENZ, DARREN ASHLEY AND SUSAN ASHLEY,

    PLAINTIFFS-APPELLANTS,

  V.

DUKE ENERGY RENEWABLE SERVICES, INC., A DELAWARE LIMITED LIABILITY COMPANY AND SHIRLEY WIND LLC,

    DEFENDANTS-RESPONDENTS.

---

APPEAL from an order of the circuit court for Brown County: MARC A. HAMMER, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Gill, JJ.

¶1 GILL, J. This appeal concerns the proper pleading standards for private nuisance claims. David and Rosemary Enz and Darren and Susan Ashley (collectively, "Families") allege that they sustained damages caused by a wind

turbine farm operated near their properties by Shirley Wind, LLC and Duke Energy Renewable Services, Inc. (collectively, "Operators"). The Families appeal a circuit court order granting the Operators' motion to dismiss the Families' complaint both for failure to state an actionable claim and as barred by the applicable statutes of limitations.[1]

¶2      The Families argue that this court should reverse the circuit court's order for three reasons. First, the Families contend that the court erroneously exercised its discretion by dismissing their complaint with prejudice. Second, the Families assert that their complaint alleged sufficient facts to state private nuisance claims. Lastly, the Families argue that the complaint alleged a continuing nuisance, as opposed to a permanent nuisance, and therefore their claims are not barred by the applicable statutes of limitations.

¶3      Conversely, the Operators argue that the circuit court correctly concluded that the Families' complaint failed to allege sufficient facts to state private nuisance claims. Regardless, even if the complaint does state actionable claims, the Operators assert that all of the Families' claims are barred by the

---

[1]  Duke Energy did not join Shirley Wind's motion to dismiss the Families' complaint. In fact, as the Families point out on appeal, Duke Energy did not file any motions, or join any motions, to dismiss the Families' complaint. Yet, on appeal, the Operators jointly filed a brief in support of the circuit court's decision to dismiss the Families' complaint.

That said, the circuit court's order granting Shirley Wind's motion dismissed the Families' complaint in its entirety. Therefore, the scope of this appeal applies to both Shirley Wind and Duke Energy. Furthermore, because the Families' complaint alleges facts pertaining to "the defendants" collectively, we will analyze the complaint as it applies to both of the Operators collectively, rather than individually.

applicable statutes of limitations because the complaint alleged permanent nuisances.

¶4    Ultimately, we conclude that the circuit court dismissed the Families' complaint without prejudice, and we therefore need not address whether the court properly exercised its discretion in that regard.  Second, we conclude that the Families' personal injury claims and property damage claims stemming from affected "views and vistas," as pled, constitute permanent nuisances and are therefore barred by the applicable statutes of limitations under WIS. STAT. §§ 893.54(1m)(a) and 893.52(1) (2021-22).[2]  Lastly, we agree with the court that the Families failed to allege sufficient facts to state a private nuisance claim based on the operation of the wind turbines that caused blinking red lights, low frequency noise ("LFN"), vibrations, or infrasound.  We reach this conclusion because the complaint is devoid of allegations that the Operators had knowledge of the alleged harms, or had knowledge that the alleged harms were substantially certain to result from the operation of the turbines, or that the Operators' conduct in causing the nuisance was unreasonable.  We affirm.

## BACKGROUND

¶5    The following facts are taken from the Families' complaint.  David and Rosemary Enz own a forty-two-acre property in Denmark, Wisconsin.  Darren and Susan Ashley own a two-acre property in De Pere, Wisconsin.  Both the Enzes and the Ashleys lived at their respective properties until 2011.

---

[2] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

¶6 In the fall of 2010, eight "2.5 MW industrial wind turbines," which were owned and operated by the Operators, were installed in Brown County. The closest turbines are located a little over one-half mile from the Enzes' property and one mile away from the Ashleys' property.

¶7 "Soon after" the turbines were installed, the Families began experiencing health issues. Specifically, "one or both" of the Enzes experienced "dizziness, ear pain, head pressure, panic, nausea, loss of balance, difficulty sleeping, chest tightness and negative cognitive impacts and more." Similarly, "one or both" of the Ashleys experienced "headaches, ear pressure and pain, difficulty sleeping, blurred vision, anxiety, irritability, depression, heart palpitations and negative cognitive impacts." The Ashleys' children also experienced similar symptoms. Both Families' symptoms would dissipate after spending "extended time" away from their properties. The Families allege that they left their respective properties in 2011 due to the symptoms. Nonetheless, both Families continue to pay for upkeep and taxes on their properties and the Ashleys also continue to pay a mortgage on their property.

¶8 The same year the Families left their properties, an acoustical consultant took measurements at the Families' properties and "found [LFN] caused by [the] turbines." In 2012, four "acoustical consulting firms" conducted a joint "study and review" of the turbines. The firms produced a report, titled "A Cooperative Measurement Survey and Analysis of Low Frequency and Infrasound at the Shirley Wind Farm in Brown County, Wisconsin" ("Report"), which concluded that "enough evidence and hypotheses have been given herein to classify LFN and infrasound as a serious issue, possibly affecting the future of the industry."

¶9    Subsequently, the Brown County Board of Health held "hearings and review[ed] … evidence" surrounding the turbines.  Thereafter, in October 2014, the County passed a motion ("Declaration") that declared the "turbines … a human health hazard for all people (residents, workers, visitors and sensitive passersby) who are exposed to infrasound/[LFN] and other emissions potentially harmful to human health."

¶10    In April 2020, the Families filed suit against the Operators in Brown County Circuit Court.[3]  The Families' complaint alleged common law nuisance claims involving personal injury and damage to property, and it sought permanent relief enjoining the Operators from operating the turbines and requiring them to dismantle them.  Additionally, the Families sought $50,000 in damages.  The Families alleged that "[t]he harmful vibration, [LFN] and infrasound experienced on [the Families'] land have occurred as a direct result of Defendants' intentional, negligent, and reckless operation of the wind turbines and without [the Families'] permission or consent."  They further alleged that wind farms, like those involving the turbines in this case, "have been alleged to have caused health effects … dubbed 'wind turbine syndrome.'"  According to the Families, the Operators "have failed to abate the continuing nuisance created by the operation" of the turbines.

¶11    Shirley Wind filed a motion to dismiss the Families' complaint.  In support of its motion to dismiss, Shirley Wind argued that the Families' claims were

---

[3]  Shortly thereafter, Shirley Wind removed the case to the United States District Court for the Eastern District of Wisconsin.  By October 2020, the case was remanded to the circuit court for reasons not relevant to this appeal.

barred by the applicable statutes of limitations.[4]  *See* WIS. STAT. § 893.54 (action for damages to person shall be commenced within three years); WIS. STAT. § 893.52(1) (action for damages to real or personal property shall be commenced within six years after the cause of action accrues).[5]  Shirley Wind argued that tort claims accrue on the date the injury is discovered or with reasonable diligence should be discovered, whichever occurs first.  Because the Families alleged that they experienced health problems in 2011 and attributed their symptoms to the turbines "as early as 2011," Shirley Wind contended that the statutes of limitations precluded the Families' claims and argued that the action should therefore be dismissed with prejudice.

¶12  Shirley Wind also argued that the Families failed to state claims for nuisance.  In support of this argument, Shirley Wind contended that "securing new sources of renewable energy has been an important policy objective in [Wisconsin]" and that "[i]t would simply be unjust to impose common law liability upon wind energy operators … for engaging in commercial activity that [Wisconsin] has not only sanctioned, but … encouraged and solicited."  Further, Shirley Wind argued that "utility and social value" are factors to consider in assessing whether a defendant's actions are "unreasonable."  According to Shirley Wind, the Families'

---

[4] Shirley Wind also argued that the Families' claims were preempted by Wisconsin's "Comprehensive Wind Energy System Regulatory Framework," that the claims should be dismissed on public policy grounds, and that the Families failed to plead facts demonstrating that they exhausted their administrative remedies.  The circuit court concluded that the Families' claims were not preempted, nor were the Families required to exhaust any administrative remedies.  Further, the court decided against applying public policy considerations because it had already concluded that the Families provided insufficient facts to allege nuisance claims.  Shirley Wind does not challenge any of these rulings; therefore, we deem them abandoned on appeal and do not address them further.  *See A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 491, 588 N.W.2d 285 (Ct. App. 1998) ("[A]n issue raised in the [circuit] court, but not raised on appeal, is deemed abandoned.").

[5] WISCONSIN STAT. §§ 893.54 and 893.52 were amended by 2015 Wis. Act 133 to include provisions relating to motor vehicle accidents.  These amendments do not affect this case.

complaint never alleged that Shirley Wind's operation of the turbines violated Wisconsin law; instead, the Families' complaint "merely identifies the injuries they allegedly sustained but provide[s] nothing other than conclusory allegations." Shirley Wind therefore asked the court to dismiss the Families' claims with prejudice.

¶13     In response to Shirley Wind's motion to dismiss, the Families first argued that the statutes of limitations did not bar their nuisance claims because the Families alleged a "continuing" nuisance, as opposed to a "permanent" nuisance, and "an action for a continuing injury may be maintained beyond the ordinary statute[s] of limitations." Second, the Families responded that they sufficiently alleged nuisance claims—specifically, that Shirley Wind's "mere act of operation of the [turbines] … create[d] the nuisance."

¶14     In a written decision and order, the circuit court granted Shirley Wind's motion to dismiss the Families' complaint for three reasons. First, the court determined that the personal injury nuisance claims were barred by the statute of limitations in WIS. STAT. § 893.54 because the Families left their properties in 2011. Even if the Families did not discover that their personal injuries were caused by the turbines until October 2014, the date of the Declaration, the time within which the Families could sue for injuries to the person would still have elapsed.

¶15     Second, the circuit court concluded that the Families' nuisance claims for injuries to property were claims for a permanent nuisance, as opposed to continuing nuisance, because "the harm cannot be abated by reasonable means at a reasonable cost." Thus, the claims for injuries to property were required to be commenced within the applicable six-year statute of limitations. According to the court, the Families' complaint was "not clear as to when the [Families] noticed the

decrease in the value of their propert[ies]." The court "infer[red] that the [Families'] property value[s] began to decrease in 2011 at the earliest and that the cause of action accrued at this time." Thus, the nuisance claims for damages to the Families' respective properties were barred by WIS. STAT. § 893.52(1).

¶16 Third, the circuit court agreed with Shirley Wind that the Families failed to allege sufficient facts to state a claim for nuisance. Specifically, the court determined that although the Families sufficiently alleged that a nuisance existed, they failed to allege sufficient facts to demonstrate that liability existed.

¶17 In reaching its decision, the circuit court addressed each type of potential liability-forming conduct. To the extent the Families alleged that Shirley Wind acted negligently, the court found that their complaint did not allege facts demonstrating that Shirley Wind had a duty to abate the operation of the turbines or had notice of the nuisance. To the extent the Families alleged that Shirley Wind acted intentionally, the court determined that the Families' complaint did not allege facts demonstrating that Shirley Wind acted for the purpose of subjecting the Families to the nuisance. Nor did the Families allege sufficient facts to demonstrate that Shirley Wind knew about the harms alleged or knew that the harms were substantially certain to result from Shirley Wind's conduct. Lastly, the court determined that the Families' allegation that Shirley Wind's operation of the turbines was an "abnormally dangerous condition or activity"—which would subject Shirley Wind to strict liability—was conclusory and that the Families' complaint did not allege how operation of the turbines was abnormally dangerous.

¶18 Notably, the circuit court's order did not state whether dismissal of the Families' complaint was with or without prejudice. Nevertheless, Shirley Wind filed a notice of entry of a final order.

¶19 The Families then filed a motion to reopen and for leave to file a first amended complaint together with a proposed amended complaint. Two weeks later, the Families filed a similar, but slightly altered, motion that contained an identical proposed amended complaint. Before the circuit court could address the Families' pending motions, the Families appealed the court's dismissal of their original complaint to this court. Roughly one week later, the Families filed a third motion to reopen and for leave to file a first amended complaint. The third motion was slightly different from the previous two motions and contained a different proposed amended complaint. The court subsequently sent a letter to the parties stating that it "will now hold [the Families'] Motion to Reopen and For Leave to File First Amended Complaint until such time as the Court of Appeals issues a decision and/or provides the [circuit] court further instruction."

¶20 The Families later asked this court to stay their appeal pending the circuit court's disposition of their motion to reopen and for leave to file a first amended complaint. They argued that the circuit court retained jurisdiction to address their motion for leave to file an amended complaint because the court's decision granting Shirley Wind's motion to dismiss was not final for purposes of appeal.

¶21 We denied the Families' motion, concluding that the circuit court's decision and order dismissing the Families' original complaint unambiguously dismissed the entire matter and, therefore, was appealable. We added that while the circuit court retained jurisdiction under WIS. STAT. § 808.075(1) to act on the Families' motion to reopen, given the court's stated intention to hold that motion in abeyance, we would deny the Families' request to stay this appeal. As anticipated, the circuit court has not acted on the Families' motion, and we therefore proceed with this decision.

9

**DISCUSSION**

¶22 The Families raise three issues on appeal. First, they argue that the circuit court erroneously exercised its discretion by dismissing their complaint with prejudice. Second, the Families argue that the court erred in concluding that their claims were for permanent, as opposed to continuing, nuisances and therefore barred by the applicable statutes of limitations. Lastly, the Families contend that the court erred by dismissing their complaint for failing to state a claim. According to the Families, their complaint adequately alleged that the Operators knew that their operation of the wind turbines resulted in, or was substantially certain to result in, the harms alleged. Furthermore, the Families assert that their complaint adequately alleged that the Operators' conduct was unreasonable.

**I. The Families' complaint was dismissed without prejudice.**

¶23 The circuit court's order dismissing the Families' complaint did not state whether the dismissal was with or without prejudice. The Families interpret the order's silence to mean that their complaint was dismissed with prejudice.[6] The Families argue that the court's decision to dismiss the action with prejudice was an erroneous exercise of discretion.[7]

---

[6] In their reply brief, the Families argue that the Operators, by failing to respond to the Families' argument on this issue, conceded that the circuit court dismissed the Families' complaint with prejudice. While the Families are correct that the Operators did not address the prejudice issue in their brief, we still decide to address the merits of the Families' argument that the circuit court erroneously exercised its discretion by dismissing their complaint with prejudice. *See United Co-op. v. Frontier FS Co-op.*, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578 (we may take a lack of response as a concession).

[7] In their briefing, the Families refer to the circuit court *abusing* its discretion. Wisconsin courts no longer use that term because it "carries an unjustified negative connotation." *Hefty v. Hefty*, 172 Wis. 2d 124, 128 n.1, 493 N.W.2d 33 (1992). Instead, we use the term "erroneous exercise of discretion." *Id.*

¶24 As previously noted, we need not reach the question of whether the circuit court erroneously exercised its discretion in this case by dismissing the Families' complaint with prejudice because we conclude that the court dismissed the complaint without prejudice. Our supreme court has stated:

> Generally, when a dismissal for failure to state a claim does not specify whether it is with or without prejudice and the defects in the dismissed complaint can be cured by a subsequent complaint, the dismissal should not be treated as a bar to the filing of the subsequent complaint.

*State ex rel. Schatz v. McCaughtry*, 2003 WI 80, ¶36, 263 Wis. 2d 83, 664 N.W.2d 596 (citing *Taylor v. Matteson*, 86 Wis. 113, 121-23, 56 N.W. 829 (1893)).

¶25 We conclude that the Families' complaint was dismissed without prejudice because: (1) the circuit court did not specify otherwise, and (2) it may be possible that errors in the original complaint can be remedied and a potential, appropriate cause of action can be alleged in a new complaint. *See id.*; *see also State ex rel. Santana v. Endicott*, 2006 WI App 13, ¶6, 288 Wis. 2d 707, 709 N.W.2d 515 (2005). The fact that the order was "final" simply means that it disposed of all matters in the current litigation between the parties. *See* WIS. STAT. § 808.03(1).

## II. The Families failed to state a nuisance claim upon which relief can be granted.

¶26 The Families next contend that the circuit court erred in granting Shirley Wind's motion to dismiss the Families' complaint as untimely and for failure to state an actionable nuisance claim. A motion to dismiss presents a question of law that we review independently. *Doe 56 v. Mayo Clinic Health Sys.—Eau Claire Clinic, Inc.*, 2016 WI 48, ¶14, 369 Wis. 2d 351, 880 N.W.2d 681. "The motion to dismiss here is based on whether the complaint was timely filed

under the applicable statute[s] of limitations." *Id.* (citation omitted). Our analysis therefore "involves the interpretation and application of a statute to an undisputed set of facts, which also presents a question of law we review de novo." *Id.* We may affirm a motion to dismiss for failure to state a claim for reasons different than those relied on by the circuit court. *Wall v. Pahl*, 2016 WI App 71, ¶27 n.11, 371 Wis. 2d 716, 886 N.W.2d 373.

¶27 "When we review a motion to dismiss, factual allegations in the complaint are accepted as true for purposes of our review." *Data Key Partners v. Permira Advisers LLC*, 2014 WI 86, ¶18, 356 Wis. 2d 665, 849 N.W.2d 693. "However, a court cannot add facts in the process of construing a complaint." *Id.*, ¶19. Ultimately, "[a] claim should not be dismissed ... unless it appears to a certainty that no relief can be granted under any set of facts that plaintiff can prove in support of his [or her] allegations." *Doe 67C v. Archdiocese of Milwaukee*, 2005 WI 123, ¶20, 284 Wis. 2d 307, 700 N.W.2d 180 (second alteration in original; citation omitted).

### A. *Nuisance law generally.*

¶28 Our supreme court has stated that "[t]here is perhaps no more impenetrable jungle in the entire law than that which surrounds the word 'nuisance.'" *Milwaukee Metro. Sewerage Dist. v. City of Milwaukee*, 2005 WI 8, ¶24, 277 Wis. 2d 635, 691 N.W.2d 658 (alteration in original; citation omitted). Broadly speaking, a nuisance is defined as "a condition or activity which unduly interferes with the use of land or of a public place." *Id.* (citation omitted). Nuisances are separated into one of two categories, depending on the nature of the interference: (1) private nuisances; and (2) public nuisances. *Id.*, ¶27; *see also* WIS JI—CIVIL 1920 (2019). "[A] private nuisance is an interference with the use

and enjoyment of land." *Milwaukee Metro.*, 277 Wis. 2d 635, ¶27 (citation omitted). Conversely, "[a] public nuisance is a condition or activity which substantially or unduly interferes with the use of a public place or with the activities of an entire community." *Id.*, ¶28 (alteration in original; citation omitted); *see also* WIS JI—CIVIL 1920 (2019). Despite the differences between private and public nuisances, "the elements required to establish liability for either are virtually identical." *Milwaukee Metro.*, 277 Wis. 2d 635, ¶46.

¶29    "Much of the confusion in nuisance law results from a '[f]ailure to recognize that ... nuisance has reference to the interest invaded and not to the type of conduct that subjects the actor to liability.'" *Id.*, ¶26 (alterations in original) (quoting RESTATEMENT (SECOND) OF TORTS § 822 cmt. b. (AM. L. INST. 1979)).[8] As such, it is necessary to distinguish a nuisance from liability for a nuisance. *Id.*, ¶25. "A nuisance is nothing more than a particular type of harm suffered; liability depends upon the existence of underlying tortious acts that cause the harm." *Id.* In other words, "for a nuisance to exist there must be harm to another or the invasion of an interest." RESTATEMENT (SECOND) OF TORTS § 821A cmt. c. (AM. L. INST. 1979). For example, "*the annoyance* caused by loud noises or by objectionable odors is a nuisance to the person affected by them." *Id.*, cmt. b. (emphasis added). It is incorrect to say that a nuisance is "itself a type of liability-forming conduct." *Milwaukee Metro.*, 277 Wis. 2d 635, ¶26 (citation omitted). "If the conduct of the defendant is not of a kind that subjects him [or her] to liability … the nuisance [may]

---

[8] Our supreme court has relied on RESTATEMENT (SECOND) OF TORTS § 822 (AM. L. INST. 1979), and it "has also previously relied on other sections of the Restatement governing nuisances." *Milwaukee Metro. Sewerage Dist. v. City of Milwaukee*, 2005 WI 8, ¶25 n.4, 277 Wis. 2d 635, 691 N.W.2d 658; *see also*, *Stunkel v. Price Elec. Co-op.*, 229 Wis. 2d 664, 670-71, 599 N.W.2d 919 (Ct. App. 1999).

exist[] but he [or she] is not liable for it." *Id.*, ¶25 (some alterations in original; citation omitted).

¶30　The alleged nuisances in this case are the Families' purported personal injuries, decreased property values, and diminished "use and enjoyment" of their properties caused by blinking red lights, LFN, vibrations, infrasound, and negatively impacted "views and vistas." For purposes of this opinion, we will analyze the first nuisance as a "personal injury" nuisance and the remaining two nuisances as those involving "property damage."

> B. *The Families allege permanent nuisances, and their claims for personal injury and property damage—related to the presence of the turbines— are barred by the applicable statutes of limitations under WIS. STAT. § 893.54(1m)(a) and WIS. STAT. § 893.52(1).*

¶31　Under WIS. STAT. § 893.52(1), an action "to recover damages for an injury to real or personal property shall be commenced within 6 years after the cause of action accrues or be barred." An action for personal injury claims must commence within three years of the date the cause of action accrues or be barred. WIS. STAT. § 893.54(1m)(a).

¶32　"[A] period of limitation within which an action may be commenced is computed from the time that the cause of action accrues until the action is commenced." WIS. STAT. § 893.04. Under the discovery rule, "all tort actions … accrue on the date the injury is discovered or with reasonable diligence should [have been] discovered, whichever occurs first." ***John Doe 1 v. Archdiocese of Milwaukee***, 2007 WI 95, ¶20, 303 Wis. 2d 34, 734 N.W.2d 827 (last alteration in original; citation omitted). "Accrual requires that plaintiffs discover, or with reasonable diligence should have discovered, 'not only the fact of injury but also that the injury was probably caused by the defendant's conduct.'" ***Gumz v.***

*Northern States Power Co.*, 2007 WI 135, ¶26, 305 Wis. 2d 263, 742 N.W.2d 271 (citation omitted; formatting altered).

¶33 Whether a nuisance claim is barred by the applicable statutes of limitations depends on whether the alleged nuisance is considered permanent or continuing. *See Sunnyside Feed Co., Inc. v. City of Portage*, 222 Wis. 2d 461, 466, 588 N.W.2d 278 (Ct. App. 1998); *see also Andersen v. Village of Little Chute*, 201 Wis. 2d 467, 487, 549 N.W.2d 737 (Ct. App. 1996). An action for a permanent nuisance must be filed within the applicable statutes of limitations, but an action for a continuing nuisance "may be maintained beyond the ordinary statute[s] of limitations." *Sunnyside Feed*, 222 Wis. 2d at 466 (citation omitted).

¶34 "[T]he appropriate factors to consider in deciding whether a nuisance is continuing are: (1) whether it constitutes an ongoing or repeated disturbance or harm, and (2) whether it can be discontinued or abated." *Id.* at 470; *see also Munger v. Seehafer*, 2016 WI App 89, ¶38, 372 Wis. 2d 749, 890 N.W.2d 22. Abatement must be possible "by reasonable means and at a reasonable cost." *See Bostco LLC v. Milwaukee Metro. Sewerage Dist.*, 2013 WI 78, ¶43, 350 Wis. 2d 554, 835 N.W.2d 160. If both factors are present, a nuisance is deemed to be continuing.

¶35 The Families first argue that labeling the nuisance permanent or continuing is improper at this stage of the proceedings. They instead contend that the proper manner by which to determine whether the nuisance is permanent or continuing is at trial because that determination is a question of fact.

¶36 We conclude that whether the Families' nuisance claims are continuing or permanent is a question of law, not fact. As explained earlier in this opinion:

> where, as here, the underlying facts surrounding the creation of the asserted nuisance are undisputed, and application of a statute of limitations is the issue, whether the nuisance is permanent or continuing becomes a question of law to be decided by the trial court and reviewed de novo by this court.

*Sunnyside Feed*, 222 Wis. 2d at 467.

¶37 The Families further argue that they were not required to "anticipatorily plead facts negating an affirmative defense" such as the Operators' statutes of limitations defense. *See Storm v. Legion Ins. Co.*, 2003 WI 120, ¶55 n.34, 265 Wis. 2d 169, 665 N.W.2d 353 ("As this court has previously stated, the expiration of a statute of limitations is an affirmative defense that must be raised by a defendant, and a plaintiff is not required to anticipate this defense by pleading against it in a complaint."). The Operators respond by arguing that the Families cited a "general rule" that does not apply in this case because the Families created or conceded an affirmative defense.

¶38 We agree with the Operators that the Families' complaint created or conceded the statutes of limitations defense. "While a complaint need not specifically deny the existence of any and all affirmative defense, it can, by inadvertence or otherwise, create or concede an affirmative defense fatal to its validity." *Robinson v. Mount Sinai Med. Ctr.*, 137 Wis. 2d 1, 16, 402 N.W.2d 711 (1987) (citation omitted). Here, the Families alleged facts that provide a basis for such a defense. Furthermore, WIS. STAT. § 802.02(3) expressly permits circuit courts to consider affirmative defenses raised by defendants *at the pleading stage*. The Operators were therefore permitted to raise the statutes of limitations defense in their motion to dismiss, and the circuit court properly considered the defense in its order granting the Operators' motion. *See* WIS. STAT. § 802.06(2)(a)9. (statute of limitations is a defense that can be raised in responsive pleading or be made by

motion); *see also* **John Doe 1**, 303 Wis. 2d 34, ¶¶2, 9-11 (affirming in part a circuit court's grant of defendants' motion to dismiss plaintiff's complaint as barred by the applicable statutes of limitations).

¶39     In terms of the merits of the statutes of limitations defense, the circuit court concluded that the nuisance claims for property damage are barred by WIS. STAT. § 893.52(1) because the nuisances are permanent and cannot be abated by reasonable means and at a reasonable cost.  The court found that there are no "engineering solutions" to the nuisances and therefore the nuisances cannot be abated without dismantling the turbines.  Indeed, the court found that the Families' only proposed solution to the nuisances was to stop the turbines from operating any further.  According to the court, this solution is not reasonable because the court inferred that the turbines "likely provide energy to several areas that are dependent on that energy" and that dismantling the turbines "is likely to be extremely expensive."[9]  In terms of the Families' personal injury claims, the court concluded that the Families were not experiencing any more harm because they abandoned their respective properties in 2011.  Assuming that the Families did not discover the source of their harms until 2014, the date of the Declaration cited in the complaint, WIS. STAT. § 893.54(1m)(a) still barred their claims.

¶40     The Families argue on appeal that they adequately alleged a continuing, and not a permanent, nuisance with respect to both their property damage and personal injury claims, and, as a result, their claims are not time barred.

---

[9] On appeal, the Families contend that the circuit court concluded that they alleged an ongoing or repeated disturbance or harm, and that the court then erroneously found that the nuisance was not abateable and incorrectly applied the negligence "continuing-violation doctrine" articulated in **Kolpin v. Pioneer Power & Light Co.**, 162 Wis. 2d 1, 469 N.W.2d 595 (1991). Because we decide this issue de novo and ultimately conclude that the alleged nuisances in this section are permanent, we need not reach the issue of whether the court erred by relying on **Kolpin**.

In support of their position, the Families contend that we "can reasonably infer that the nuisance can be discontinued or abated by the simple expedient of ceasing operation of the turbines" and by dismantling the turbines. Additionally, the Families add that the circuit court failed to "identify a single allegation to support" its inference that the turbines provide energy "to several areas that are dependent on that energy" or that the costs of abating or dismantling the turbines would be expensive. According to the Families, "[t]he complaint contains no allegations regarding the amount of energy produced" by the turbines or the cost of dismantling them. As to the continuity of the disturbance or harm, the Families contend that they "alleged that the operation of Shirley Wind's turbines causes 'harmful vibration, [LFN] and infrasound' and subjects plaintiffs' properties to continuously blinking red lights." Furthermore, the Families argue that their claims for personal injury are continuing because they "remain unable to return to their homes due to physical symptoms caused by" the turbines.

### i. The Families' nuisance claims for personal injury are barred by WIS. STAT. § 893.54(1m)(a).

¶41 The Families' claims for personal injury are barred by WIS. STAT. § 893.54(1m)(a) because the turbines alleged to have caused their injuries are no longer causing the Families an ongoing or repeated disturbance or harm, and are therefore not continuous.[10] *See Sunnyside Feed*, 222 Wis. 2d at 466. According to the complaint, the turbines were erected in the fall of 2010. "Soon after" the turbines were operating, the Families began experiencing symptoms including difficulty

---

[10] The Families correctly contend that a nuisance is an invasion of a landowner's use and enjoyment of land. The Families extend that definition, however, to argue that a nuisance is continuous, as opposed to permanent, if a landowner leaves his or her property where the nuisance is taking place and he or she no longer experiences personal injury. We disagree. The Families are no longer experiencing the alleged injuries if the Families no longer visit the properties and face the physical symptoms they allegedly faced when at the properties.

sleeping, ear pain, and "negative cognitive impacts," and both the Enzes and the Ashleys moved out of their homes by May 2011. Thereafter, their physical symptoms ceased, and according to the complaint, the Families last suffered personal injuries caused by the turbines in May 2011.

¶42 Because the alleged nuisance as it relates to the Families' personal injury claims is not a continuous nuisance, the Families had three years from the date when they knew or should have known their personal injuries were caused by the turbine operation within which to initiate an action. *See* WIS. STAT. § 893.54(1m)(a). While it may be reasonable to conclude that the families should have discovered that the turbines were the source of their injuries given the timing of their symptoms in relation to the erection of the turbines and the dissipation of the symptoms upon moving away in 2011, we can assume without deciding that the Families did not know who or what "probably caused" the symptoms they experienced at the time they moved away. It is clear, however, that the Families, through reasonable diligence, should have discovered that the turbines may have been causing their alleged symptoms no later than October 14, 2014, the date of the Declaration. *See Gumz*, 305 Wis. 2d 263, ¶26. Therefore, to avoid the statute of limitations bar, the Families were required to commence their personal injury claims by no later than October 2017, not April 2020 when the present action was actually filed.

  *ii.* *The Families' nuisance claims for property damage relating to the presence of the turbines that disrupted "views and vistas" are barred by WIS. STAT. § 893.52(1).*

¶43 The Families' claims for property damage relating to disrupted "views and vistas" are barred by WIS. STAT. § 893.52(1) because the alleged injuries suffered by the Families are not ongoing or repeating.

¶44 Our decision in *Sunnyside* is instructive. In *Sunnyside*, the plaintiffs owned a building located along a canal. *Sunnyside*, 222 Wis. 2d at 465. The defendant "altered the configuration of the canal bank behind the [plaintiff's building] by removing subsoil and large boulders." *Id.* Unfortunately, "[t]hese boulders provided support for the back of the [building], and their removal allegedly caused a gradual collapse of that portion of the [building], as well as ongoing damage to the building's foundation." *Id.* The defendant attempted to replace the boulders with "cribs filled with washed gravel," however, "the cribs contained voids, permitting sand and soil to migrate from underneath the [building]." *Id.*

¶45 The plaintiffs filed suit against the defendant alleging common law nuisance. *See id.* The defendants filed a motion for summary judgment, asserting the nuisance claim was barred by the applicable statute of limitations. *Id.* The circuit court denied the motion. *Id.* Following a jury verdict finding the defendants created a nuisance, the defendants moved for a judgment notwithstanding the verdict, again asserting that the nuisance claim was barred by the applicable statute of limitations. *Id.* The circuit court denied the motion, concluding that the nuisance the jury found was continuing rather than permanent and, therefore, not barred by the applicable statute of limitations. *Id.* at 466, 468. On appeal, we affirmed the circuit court. *Id.* at 471. In doing so, we cited evidence that the nuisance was still ongoing. Specifically, "the fine soils underneath the [building] continue to move, and the foundation wall continues to settle." *Id.*

¶46 In reaching our decision in *Sunnyside*, we relied heavily on California case law. *See id.* at 469-71. For example, we relied on ***Baker v. Burkbank-Glendale-Pasadena Airport Authority***, 705 P.2d 866, 870 (Cal. 1985), where the Supreme Court of California stated that "permanent nuisances are of a type where 'by one act a permanent injury is done, [and] damages are assessed once for all.'"

20

*Id.* at 868 (alteration in original; citation omitted). "Damages are not dependent upon any subsequent use of the property but are complete when the nuisance comes into existence." *Id.* at 869. Permanent nuisances have included "solid structures, such as a building encroaching upon the plaintiff's land, a steam railroad operating over plaintiff's land, or regrade of a street for a rail system." *Id.* (citations and footnotes omitted). Conversely, the *Baker* court explained that an example of a continuing nuisance is one "caused by noise, vibration or foul odor." *Id.* *Baker* dealt with airport noise, specifically, and held that "[a]irport operations are the quintessential continuing nuisance." *Id.* at 873.

¶47 Using the *Baker* court language, in this case, "by one act[,] a permanent injury [was] done." *Id.* at 868 (citation omitted). In other words, the Families alleged decreased property values and diminished "use and enjoyment" of their properties based partially on the disturbance or harm to their views and vistas—views that were permanently disrupted in 2011 by the presence of the turbines. Unlike in *Sunnyside* where the harm caused by the nuisance was occurring at the time the complaint was filed (that is, the soils were continuously moving and continuously shifting the building's foundation), the damage here occurred when the turbines were erected, much like the example given in *Baker* of a solid building encroaching upon someone's land. *See Baker*, 705 P.2d at 869. The alleged damages here are not dependent upon the Operators' future use of the turbines. *See id.* Even if the turbines stopped operating, they would still pose an obstruction to the Families' views and vistas.

¶48 Therefore, we conclude that the Families' property damage claims as they relate to disrupted "views and vistas" are for permanent nuisances, not continuing nuisances, and are subject to WIS. STAT. § 893.52(1). The Families' property damage claims as they relate to interrupted "views and vistas" would have

21

accrued when the turbines were erected in 2011.  *See Gumz*, 305 Wis. 2d 263, ¶26. The Families therefore had six years from that date to file a complaint but they failed to do so.  Those claims are barred by § 893.52(1).

¶49      The Families also assert claims for property damage due to decreased property values and their loss of the use and enjoyment of their properties caused by the turbines' blinking red lights, LFN, vibrations, and infrasound.  We need not determine whether the Families timely filed their complaint as to these claims under WIS. STAT. § 893.52(1) because, as explained below, we conclude that the Families' complaint failed to state actionable nuisance claims for this property damage.

C. *The Families' complaint failed to state actionable nuisance claims for property damage based upon the use of the turbines that caused LFN, vibrations and infrasound, and the resulting loss of the use and enjoyment of their properties and decreased property values.*

¶50      Assuming without deciding that the Families' claims for property damage based upon the use of the turbines that caused blinking red lights, LFN, vibrations, infrasound, loss of the use and enjoyment of the properties, and decreased property values are not barred by the applicable statute of limitations, the Families nonetheless failed to state an actionable claim for this nuisance on the merits.  "A motion to dismiss for failure to state a claim tests the legal sufficiency of the complaint."  *Data Key Partners*, 356 Wis. 2d 665, ¶19 (citation omitted). Under WIS. STAT. § 802.02(1)(a), a complaint must state "[a] short and plain statement of the claim, identifying the transaction or occurrence or series of transactions or occurrences out of which the claim arises and showing that the pleader is entitled to relief."  We are to construe all pleadings liberally "as to do substantial justice."  Sec. 802.02(6); *Doe 67C*, 284 Wis. 2d 307, ¶35.  Bare legal conclusions, however, will "not fulfill[] a plaintiff's duty of stating the elements of a claim in general terms."  *Doe 67C*, 284 Wis. 2d 307, ¶36 (alteration in original;

citation omitted). "It is not enough for the plaintiff to contend that the requisite facts will be 'supplied by the discovery process.'" *Id.* (citation omitted). "In short, we will dismiss a complaint if, '[u]nder the guise of notice pleading, the complaint before us requires the court to indulge in too much speculation leaving too much to the imagination of the court.'" *Id.* (alteration in original; citation omitted).

### i. *We assume without deciding that the Families' complaint adequately alleged a private nuisance that resulted in substantial harm to their respective properties.*

¶51 As outlined above, we begin our analysis with a determination of whether a nuisance exists. "[F]or a nuisance to exist there must be harm to another or the invasion of an interest." *Milwaukee Metro.*, 277 Wis. 2d 635, ¶25 (alteration in original; citation omitted). "As long as the interference is unreasonable and substantial, rather than petty or trifling, 'virtually any disturbance of the enjoyment of the property may amount to a nuisance.'" *Krueger v. Mitchell*, 112 Wis. 2d 88, 106, 332 N.W.2d 733 (1983) (citation omitted). "Physical occupation of the property of another is not necessary to" demonstrate a nuisance. *Bostco*, 350 Wis. 2d 554, ¶31. "For example, invasions of noxious odors can rise to the level of a nuisance," *id.*, as can smoke, *Sohns v. Jensen*, 11 Wis. 2d 449, 460-61, 105 N.W.2d 818 (1960), and noise, *McCann v. Strang*, 97 Wis. 551, 553, 72 N.W. 1117 (1897).

¶52 In addition to the presence of an invasion to another's interest or property, the harm to another must also be substantial in order to fully constitute a nuisance. *Krueger*, 112 Wis. 2d at 106-07; *see also* WIS JI—CIVIL 1922 (2010). "Significant harm" means "more than slight inconvenience or petty annoyance…. [T]here must be a real and appreciable invasion of the plaintiff's

interests before he [or she] can have an action for" a nuisance. ***Krueger***, 112 Wis. 2d at 107 (citation omitted).

¶53 Regarding the presence of a nuisance, the Families' alleged nuisance is the interference with their properties, and the significant harm alleged is the reduction in their property values and the loss of the use and enjoyment of their properties. The Families agree with the circuit court's conclusion that their complaint adequately alleged both the existence of a private nuisance and that the nuisance caused significant harm to their respective properties. The Operators do not contest these conclusions, and we will therefore assume without deciding that the Families adequately alleged a private nuisance that caused significant harm.

### ii. *The Families failed to plead sufficient facts to allege liability-forming conduct.*

¶54 The second step—after determining that a nuisance is present and that the harm is substantial—is determining whether liability-forming conduct is also present. "[L]iability is 'founded on the wrongful act in ... creating or maintaining [the nuisance].'" ***Milwaukee Metro.***, 277 Wis. 2d 635, ¶32 (alterations in original; citation omitted). We note, similar to the court in ***Milwaukee Metropolitan***, that "[m]uch of the confusion in this case results from the parties' dispute over whether" the Families allege that the Operators "'created a nuisance' or 'maintained a nuisance' and the differing standards of liability for each classification." *See id.*, ¶33. Creating a nuisance is also referred to as liability "for an 'act,'" while maintaining a nuisance is also referred to as liability for a "failure to act." ***Id.***, ¶35 (citation omitted).

¶55 When a nuisance is "created by [a] defendant, no question of negligence or want of ordinary care is involved"—i.e., the allegations are based on

intentional conduct. ***Id.***, ¶33 (quoting ***Brown v. Milwaukee Terminal Ry. Co.***, 199 Wis. 575, 589, 227 N.W. 385 (1929)). In these created-nuisance cases, "liability 'does not rest on the degree of care used, for that presents a question of negligence, but on the degree of danger existing even with the best of care.'" ***Id.*** (citation omitted). In other words, when a defendant creates a nuisance, the issue of liability becomes one "of intentional but unreasonable conduct." ***Id.*** (citation omitted). Examples of created nuisances include "a tannery or a slaughter-house in the midst of a residential area, where the mere act of using the plant creates the nuisance."[11] ***Id.*** (citation omitted).

¶56 In these cases "where the defendant is 'engaged in intentional conduct that severely affect[s] the neighbor's peaceful use and enjoyment of their property[,]' '[a] finding of intentional but unreasonable conduct, even though lawful, is sufficient.'" ***Id.*** (alterations in original; citation omitted). Intentional conduct results if the defendant (a) acts for the purpose of causing the nuisance; or (b) if the defendant knows that the nuisance is resulting or is substantially certain to result from the defendant's conduct. *See id.*, ¶37; WIS JI—CIVIL 1920 (2019). The conduct is unreasonable if "(a) the gravity of the harm outweighs the utility of the [defendant's] conduct, or (b) the harm caused by the conduct is serious and the financial burden of compensating for this and similar harm to others would not make the continuation of the conduct not feasible." ***Crest Chevrolet-Oldsmobile-Cadillac, Inc. v. Willemsen***, 129 Wis. 2d 129, 139, 384 N.W.2d 692 (1986) (quoting

---

[11] Liability for a nuisance can also be based on "the rules governing reckless conduct or abnormally dangerous conditions." ***Milwaukee Metro.***, 277 Wis. 2d 635, ¶32 n.5. The latter is considered a "strict liability" tort. *See* WIS JI—CIVIL 1920 (2019). Neither of these types of liability-forming conduct is at issue in this case.

25

RESTATEMENT (SECOND) OF TORTS § 826 (AM. L. INST. 1979)); *see also* WIS JI—CIVIL 1926 (2010).

¶57 Conversely, there are cases where a defendant "maintained a nuisance"—i.e., based on unintentional conduct. *Milwaukee Metro.*, 277 Wis. 2d 635, ¶¶32-34. In these maintained-nuisance cases, "liability is predicated upon the defendant's failure to remove [a] harmful condition after he [or she] has notice of its existence." *See id.*, ¶34. "Such cases involve changes to otherwise benign objects that develop over time and become harmful, through no fault of the owner of the object." *Id.* For example, water mains can become a maintained nuisance if, "over time, through the natural process of corrosion and [a defendant's] negligence in repairing and maintaining its mains," "pipes leak, break, or otherwise create a condition that interferes" with a plaintiff. *See id.*, ¶40. "[T]here must be proof that the actor was 'under a duty to take positive action to prevent or abate the interference with the public interest or the invasion of the private interest.'" *Id.*, ¶35 (citation omitted). In other words, unintentional conduct exists where a "defendant unintentionally maintained or failed to abate a nuisance, [in which case] the traditional rules for liability based on negligent conduct apply."[12] WIS JI—CIVIL 1920 (2019); *see also Milwaukee Metro.*, 277 Wis. 2d 635, ¶35. Additionally, the plaintiff must show that the defendant had notice of the nuisance. *Milwaukee Metro.*, 277 Wis. 2d 635, ¶34; WIS JI—CIVIL 1922 (2010).

¶58 The parties disagree on whether the Families alleged enough facts in the complaint that, if true, would demonstrate liability—i.e., that the Operators'

---

[12] "We emphasize that negligence and nuisance are distinct torts, and that negligence is just one way (as opposed to intentional) that a nuisance can be maintained." *Physicians Plus Ins. Corp. v. Midwest Mut. Ins. Co.*, 2002 WI 80, ¶27 n.22, 254 Wis. 2d 77, 646 N.W.2d 777. "The point is that nuisance is a result and negligence is a cause and they cannot be distinguished otherwise." *Id.* (citation omitted).

conduct was intentional but unreasonable or that it was unintentional and negligent. In its order granting Shirley Wind's motion to dismiss, the circuit court determined that the Families' complaint did not allege facts demonstrating that Shirley Wind had a duty to abate the operation of the turbines or had notice of the nuisance. On appeal, the Operators argue that the circuit court conducted the correct analysis in this regard. Before this court, the Families do not contend that they alleged sufficient facts to state claims for liability based on the Operators maintaining a nuisance—i.e., unintentional and negligent conduct—and they fault the circuit court for conducting such an analysis. We will therefore assume without deciding that the Families failed to state private nuisance claims based on unintentional and negligent liability.[13]

¶59     There is little prior Wisconsin case law analyzing a motion to dismiss for failure to state a common law nuisance claim based on intentional but unreasonable conduct.[14]  That said, we conclude that the Families' complaint fails to sufficiently plead liability-forming conduct based on intentional but unreasonable conduct.

> a. *The Families failed to allege sufficient facts to demonstrate that the Operators created a nuisance*.

---

[13] The Families' original complaint conflated intentional and unintentional liability standards. The Families alleged that the Operators "failed to abate the continuing nuisance created by the operation of [the turbines]." Therefore, it was reasonable for the circuit court to analyze each type of liability-forming conduct because a "created" nuisance deals with intentional conduct, while a failure to "abate" or maintain a nuisance deals with unintentional conduct.

[14] We are aware of only one Wisconsin case to address a circuit court's decision on a motion to dismiss for failure to state a common law nuisance claim. That decision, ***Quade v. City of Oshkosh***, No. 1981AP895, unpublished slip op. (WI App Mar. 25, 1982), was unpublished and decided per curiam and is therefore not citable for purposes of our analysis. *See* WIS. STAT. RULE 809.23(3)(b).

¶60   To reiterate, for the Families to overcome the motion to dismiss for failure to state a nuisance claim based on intentional but unreasonable conduct, they were required to adequately allege two elements in their complaint. First, to show the conduct was intentional, the Families must allege that the Operators acted for the purpose of causing the nuisance, or that the Operators knew that the nuisance was resulting or was substantially certain to result from their conduct. "It is important to clarify that when a nuisance is alleged to fall under the second category of intentional conduct, the 'knowledge' requirement refers to knowledge that the condition or activity is causing harm to another's interest in the use and enjoyment of land." *Milwaukee Metro.*, 277 Wis. 2d 635, ¶38. Second, the Families must allege that the Operators' conduct was unreasonable. *Crest*, 129 Wis. 2d at 139.

¶61   Here, the Families do not contend that their complaint alleged that the Operators acted for the purpose of causing the nuisance, and we will therefore assume without deciding that the Families' complaint did not allege sufficient facts in that regard. We will focus our analysis on whether the Families alleged sufficient facts to demonstrate that the Operators knew that the turbines were causing the harm or knew that the turbines were substantially certain to cause the harm, and that the nuisance was unreasonable.

¶62   To claim that the Operators created a nuisance, the Families were first required to allege that the Operators knew of the harm to the Families' interests. The Families cite the complaint's reference to the Report, as well as to the subsequent Declaration, to argue that they adequately alleged the Operators' knowledge. According to the Families, "[i]t can reasonably be inferred that Shirley Wind knew of [the Report] conducted on its wind turbine generators and the conclusions of that study." Similarly, the Families contend that "it can reasonably be inferred that Shirley Wind knew that the [County] had declared [the turbines] 'a

28

human health hazard'—particularly where the [D]eclaration was made 'after extended hearings and review of evidence.'"  As such, the Families argue that, "[i]n these cases[,] the first invasion resulting from the [defendants'] conduct may be either intentional or unintentional; but when the conduct is continued after the [defendant] knows that the invasion is resulting from it, further invasions are intentional."  *See* ***Vogel v. Grant-Lafayette Elec. Co-op.***, 201 Wis. 2d 416, 432, 548 N.W.2d 829 (1996) (citation omitted).

¶63     The Operators argue that the Families fail to "point to any allegation [in the complaint] that the [Operators] had any such knowledge" of the Report or the Declaration.[15]  According to the Operators, neither the Report nor the Declaration "is alleged to have identified any actual harm to any individual or property, let alone to the [Families] themselves."  Similarly, the Operators characterize the Report and the Declaration as concluding that the turbines are "*potentially* harmful."

¶64     In full, the portion of the Families' complaint describing the Report, the Declaration, and "wind turbine syndrome" states:

> 12. In 2012, four acoustical consulting firms, some of which derived income from the wind turbine industry, conducted a joint study and review of the Defendants' [turbines] in Brown County, Wisconsin which is commonly referred to as the Shirley Wind Farm which included the Ashley and Enz homes.  On July 28, 29 and 30, 2011 acoustical consultant Rick James also took measurements at the Ashley and Enz homes and found [LFN] caused by wind turbines.  On December 24, 2012 the report entitled "A Cooperative Measurement Survey and Analysis of

---

[15]  The Families argue in their reply brief that the Operators "do not appear to dispute that the complaint raises an inference that [they] knew of the [Report] and the [Declaration]."  We disagree.  The Operators plainly state that the complaint offers "only the bland assertion[s]" and "conclusory inference[s]" that the Operators had knowledge of the Report or the Declaration.

Low Frequency and Infrasound at the Shirley Wind Farm in Brown County, Wisconsin" concluded that "the four investigating firms are of the opinion that enough evidence and hypotheses have been given herein to classify LFN and infrasound as a serious issue, possibly affecting the future of the industry."

13. On October 14, 2014 after extended hearings and review of evidence the Brown County Board of Health voted upon and passed a motion that declared "the industrial wind turbines at Shirley Wind project in the Town of Glenmore, Brown County, Wisconsin a human health hazard for all people (residents, workers, visitors and sensitive passersby) who are exposed to infrasound/[LFN] and other emissions potentially harmful to human health."

….

16. Wind farms such as the one owned by Defendants, have been alleged to have caused health effects not limited to vestibular disorders, nausea, motion sickness, headache, tinnitus, sleep deprivation, vertigo, dizziness, and anxiety. This constellation of symptoms has been dubbed "wind turbine syndrome" and has been experienced by persons similarly situated to Plaintiffs.

None of these three allegations, or reasonable inferences that may be drawn from them, meet the minimum level of facts required to allege an intentional common law nuisance claim.[16]

¶65　First, the Families' complaint fails to state sufficient facts to demonstrate that the Operators had knowledge of the Report, the Declaration, or the existence of wind turbine syndrome. In *Doe 67C*, our supreme court analyzed, among other things, whether Doe's complaint alleged sufficient facts to plead that the Archdiocese of Milwaukee had "knowledge" of a priest's alleged sexual abuse

---

[16] Although unclear, we will assume that the 2011 measurements make up part of the Report. *See Doe 56 v. Mayo Clinic Health Sys.—Eau Claire Clinic, Inc.*, 2016 WI 48, ¶14, 369 Wis. 2d 351, 880 N.W.2d 681 (we accept as true "any reasonable inferences arising" from the pled facts).

toward Doe for purposes of a common law negligence claim. Doe's complaint alleged that the priest had sexually abused him between 1960 and 1962. ***Doe 67C***, 284 Wis. 2d 307, ¶2. The complaint pled facts such as:

> 9. On information and belief, [the Diocese] knew or should have known of [the priest's] problems with alcohol abuse as well as his tendency and history of sexually abusing children. Despite this [the Diocese] continued to allow [the priest] to have unsupervised contact with children.
>
> ....
>
> 10. On information and belief, in approximately 1980 an agent of [the] Diocese witnessed [the priest] sexually abusing a boy in [a church].
>
> ....
>
> 23. [The] Diocese … knew or should reasonabl[y] have known of [the priest's] dangerous and exploitative propensities as a child sexual exploiter and/or as an unfit agent and despite such knowledge, [the] Diocese … negligently retained and failed to provide reasonable supervision of [the priest].
>
> ....
>
> 30. On information and belief, [the] Diocese … had actual or constructive knowledge of [the priest's] inappropriate behavior, as discussed above.

***Id.***, ¶¶37-38 (some alterations in original).

¶66 The court held that "[n]one of these paragraphs allege[d] that the [Diocese] knew" of the priest's sexual abusive behavior. ***Id.***, ¶39. According to the court, the pleadings either alleged knowledge of incidents that occurred after the alleged sexual assault in the present case or "contain[ed] no allegation relating the date of the [Diocese's] knowledge." ***Id.*** The court concluded that it "cannot permit Doe to rely on hypothetical, speculative 'facts' that might or might not be supplied by the discovery process." ***Id.***, ¶46.

¶67    Like our supreme court's conclusion in *Doe 67C* that the plaintiff's complaint failed to state sufficient facts to demonstrate knowledge, we too conclude that the Families' complaint failed to allege the Operators' knowledge of the nuisance.  Unlike the complaint's minimal allegations about knowledge in *Doe 67C*, the complaint in this case does not even make the bare allegation that the Operators knew or should have known of the Report, the Declaration, or wind turbine syndrome.  The words "knowledge," "knew," and "know" are not found in the complaint.  Taking the allegations in the complaint as true, it cannot reasonably be inferred from the complaint that the Operators had knowledge of the Report, the Declaration, or wind turbine syndrome.

¶68    Nevertheless, even if the complaint alleged sufficient facts to support an inference that the Operators had knowledge of the Report, the Declaration, and the allegation regarding wind turbine syndrome in general, the complaint fails to identify any nuisance *associated with the Families*.  With regard to the Report, the consulting firms "found [LFN]" at the Families' respective properties, and that the LFN was "caused by [the turbines]."  The Report also stated that the firms were of the "opinion that enough evidence and hypotheses have been given herein to classify LFN and infrasound as a serious issue, possibly affecting the future of the industry."

¶69    Importantly, however, the Report did not conclude that the LFN levels at the Families' properties were high enough to cause harm.  *See Milwaukee Metro.*, 277 Wis. 2d 635, ¶38.  As our supreme court recognized when discussing *Vogel*, a stray voltage private nuisance case, "it [is] not sufficient that the defendant knew that some stray voltage invaded the farmer's land; rather, *proof was required that the defendant knew that unreasonable levels* of the stray voltage were causing harm to the plaintiff's cows."  *Milwaukee Metro.*, 277 Wis. 2d 635, ¶38 (emphasis added; citing *Vogel*, 201 Wis. 2d at 432-33).  Nothing in the complaint regarding the Report

alleges facts sufficient to support a reasonable inference that the Operators knew that "unreasonable levels of [LFN] were causing harm to [the Families]." *See **id.***

¶70     Similarly, the allegations in the complaint regarding the Declaration do not contain sufficient facts demonstrating that the Operators knew of unreasonable levels of LFN on the Families' properties.  Specifically, the County declared the turbines "in the Town of Glenmore, Brown County, Wisconsin a human health hazard for all people (residents, workers, visitors and sensitive passersby) who are exposed to infrasound/[LFN] and other emissions potentially harmful to human health."

¶71     The Declaration simply states that the "infrasound/[LFN] and other emissions" are "potentially harmful."  Knowledge of "potential" harm is not enough to successfully plead a claim for common law nuisance based on intentional conduct.  Instead, the allegations in the complaint must give rise to a reasonable inference that "the [Operators] knew that unreasonable levels of [LFN] were causing harm" to the Families' properties (i.e., that the LFN was decreasing the Families' property values and interfering with the Families' use and enjoyment of their properties), or that they were substantially certain it would do so.  *See **id.*** Additionally, the complaint does not state how far the "potentially" damaging noises travel—i.e., does the potentially dangerous LFN reach the Families' properties?— nor does the complaint allege that the Declaration was based on the LFN measurements at the Families' properties.  The absence of such allegations in the complaint is particularly troublesome in this case because, according to the complaint, the Families' properties are in De Pere, Wisconsin, and Denmark, Wisconsin, respectively—not in the Town of Glenmore to which the health hazard presumably applies and where the turbines are located.

¶72 For similar reasons, even if the Operators knew about wind turbine syndrome, nothing in the complaint ties the syndrome to the Families. Instead, the allegation simply states that symptoms associated with wind turbine syndrome have "been experienced by persons similarly situated to [the Families]." Again, these allegations are insufficient to create a reasonable inference that the Operators had knowledge of the Families experiencing wind turbine syndrome.

¶73 Therefore, even if the Operators were aware of the Report, the Declaration, or wind turbine syndrome, the complaint does not contain any allegations supporting an inference that the Operators were aware of any harm to any property, including, specifically, the Families' properties. As our supreme court has stated:

> "[I]t is not enough to make an invasion intentional that the actor realizes or should realize that his [or her] conduct involves a serious risk or likelihood of causing the invasion." Rather, in order for an invasion to be intentional, the actor "must either act for the purpose of causing it or know that it is resulting or is substantially certain to result from his [or her] conduct."

*Milwaukee Metro.*, 277 Wis. 2d 635, ¶39 (citations omitted). In other words, the Families needed, but failed, to allege that the Operators had knowledge of the alleged harms, or had knowledge that the alleged harms were substantially certain to result from the operation of the turbines.

¶74 Further, even if we were to conclude that the Families adequately pled facts demonstrating that the Operators had knowledge of the alleged harms—in other words, that the Operators acted intentionally—we further conclude that the Families failed to plead facts demonstrating that the Operators' conduct was unreasonable. As outlined above, to successfully plead a claim for common law

nuisance based on intentional conduct, that conduct must also be unreasonable. The conduct is unreasonable if "(a) the gravity of the harm outweighs the utility of the [defendant's] conduct; or (b) the harm caused by the conduct is serious and the financial burden of compensating for this and similar harm to others would not make the continuation of the conduct not feasible."[17] *Crest*, 129 Wis. 2d at 139 (quoting RESTATEMENT (SECOND) OF TORTS § 826 (AM. L. INST. 1979)); *see also* WIS JI—CIVIL 1926 (2010).

¶75 "In determining the gravity of the harm," it is important to consider:

(a) The extent of the harm involved;

(b) the character of the harm involved;

(c) the social value that the law attaches to the type of use or enjoyment invaded;

(d) the suitability of the particular use or enjoyment invaded to the character of the locality; and

(e) the burden on the person harmed of avoiding the harm.

*Crest*, 129 Wis. 2d at 141 (quoting RESTATEMENT (SECOND) OF TORTS § 827 (AM. L. INST. 1979)). Similarly, in determining the utility of the conduct, it is important to consider:

(a) the social value that the law attaches to the primary purpose of the conduct;

---

[17] The Families argue that whether operating the turbines "produces a public benefit outweighing the harm to [the Families] is a question of fact ill-suited [for] resolution on a motion to dismiss." It is well-settled law that a complaint must allege "a statement of circumstances, occurrences[,] and events in support of the claim presented." *See Doe 67C v. Archdiocese of Milwaukee*, 2005 WI 123, ¶36, 284 Wis. 2d 307, 700 N.W.2d 180 (citation omitted). As such, we conclude that the Families were required to put forth sufficient allegations to make a *showing* of unreasonableness. *See id.* (bare legal conclusions will "not fulfill[] a plaintiff's duty of stating the elements of a claim in general terms" (alteration in original; citation omitted)).

(b) the suitability of the conduct to the character of the locality; and

(c) the impracticability of preventing or avoiding the invasion.

RESTATEMENT (SECOND) OF TORTS § 828 (AM. L. INST. 1979); *see also Crest*, 129 Wis. 2d at 145.

¶76    The Operators cite *Hocking v. City of Dodgeville*, 2009 WI 70, 318 Wis. 2d 681, 768 N.W.2d 552, to support their conclusion that the turbine operations were reasonable.  In *Hocking*, our supreme court analyzed a common law nuisance claim based on unintentional, negligent conduct.  *Id.*, ¶¶9-10.  The court relied "on common law doctrines governing surface water to ascertain the defendants' duty of ordinary care under the circumstances."  *Id.*, ¶13.  In doing so, the court applied the surface-water-based "reasonable use rule" (or doctrine), which states that "a landowner must use his [or her] land reasonably, and a duty to act will arise if the landowner's use of his [or her] land that resulted in altering the flow of surface waters is unreasonable."  *See id.*, ¶21; *see also State v. Deetz*, 66 Wis. 2d 1, 19, 224 N.W.2d 407 (1974) (adopting the "reasonable use" doctrine in respect to surface waters and abandoning the "common enemy" doctrine).  Thus, under the reasonable use rule, property owners "have a positive duty to abate [a] nuisance only if the use of their property … altered the flow of surface water and was an unreasonable use of their property."  *Hocking*, 318 Wis. 2d 681, ¶21.  Ultimately, the court concluded that "the defendants' conduct did not involve a use of their property that altered the flow of surface water.  Therefore, their use [was] not unreasonable, and they ha[d] no duty to abate in the first instance."  *Id.*, ¶22.

¶77    According to the Operators, *Hocking* dictates the outcome in this case because "[t]he [Families'] claims are based on the [Operators'] operation of a wind

farm, a lawful activity with an undisputed and laudable public purpose." But *Hocking* is unhelpful to this case because the Families are not alleging a common law nuisance claim based on: (1) unintentional, negligent conduct; or (2) a nuisance related to surface water.[18] *Hocking* employed the reasonable use rule to determine whether the defendants had a duty of care to the plaintiffs. Here, because the Families are alleging an intentional but unreasonable nuisance claim, duty is not at issue. Furthermore, the issue in this case relates to wind turbines, not surface water. Nor we do read *Hocking* to mean that a lawful activity cannot be unreasonable, as the Operators suggest. The *Hocking* analysis is therefore simply unhelpful in this case.

¶78 To demonstrate that their complaint states sufficient facts to demonstrate that the Operators' conduct was unreasonable, the Families cite *Public Service Co. v. Van Wyk*, 27 P.3d 377 (Colo. 2001), a case from outside our jurisdiction. In *Van Wyk*, the plaintiffs alleged a nuisance after a public utility commission (PUC) approved electrical line upgrades for a public service company. *Id.* at 381. Prior to the plaintiffs' lawsuit, the county where the lines were upgraded had filed suit against the company. *Id.* After several appeals in the county's case, the Colorado Supreme Court effectively affirmed the PUC's decision. *Id.* at 382.

¶79 The plaintiffs in *Van Wyk* later filed suit, alleging, among other things, that the upgrades, which were adjacent to their home, caused "increased noise, electromagnetic fields, and radiation waves that encroached upon their property, causing mental suffering and distress, as well as the loss of use and

---

[18] The reasonable use rule, as articulated in *Crest* and *Deetz*, is simply an adoption of the RESTATEMENT (SECOND) OF TORTS §§ 822, 826-28, in the surface water context. *See State v. Deetz*, 66 Wis. 2d 1, 17-18, 224 N.W.2d 407 (1974); *Crest Chevrolet-Oldsmobile-Cadillac, Inc. v. Willemsen*, 129 Wis. 2d 129, 138-145, 384 N.W.2d 692 (1986); *see also Hocking v. City of Dodgeville*, 2009 WI 70, ¶17, 318 Wis. 2d 681, 768 N.W.2d 552.

enjoyment of that property." *Id.* at 381. Despite the company's knowledge of the invasion, it continued to use the lines. *Id.* at 392. The trial court dismissed the claims for, inter alia, failure to state a claim upon which relief could be granted because the "suit indirectly sought a reversal of PUC's ruling," which the Colorado Supreme Court had already previously affirmed. *Id.* at 382.

¶80 On appeal, the Colorado Supreme Court first outlined its nuisance jurisprudence. Similar to Wisconsin, "the elements of a claim of nuisance [in Colorado] are an intentional, negligent, or unreasonably dangerous activity resulting in the unreasonable and substantial interference with a plaintiff's use and enjoyment of her [or his] property." *See id.* at 391. Like the case at hand, the plaintiffs in *Van Wyk* alleged an intentional nuisance. *See id.* at 391-92.

¶81 Regarding the unreasonableness element,[19] the court explained that

---

[19] The *Van Wyk* court also determined that the plaintiffs had alleged sufficient facts in their complaint to show that the public service company had knowledge of the nuisance. *Public Serv. Co. v. Van Wyk*, 27 P.3d 377, 392, 395 (Colo. 2001). Specifically, the court held that:

> While it is not entirely clear from the [plaintiffs'] complaint whether [the public service company] was ever actually made aware of the alleged invasion interfering with the use and enjoyment of the [plaintiffs'] property, we must view the complaint in the light most favorable to the plaintiff. The allegation in the complaint that "[the] [p]ublic [s]ervice [c]ompany has refused to discuss compensation or make any offers of payment to the property owners" suggests that the property owners made [the public service company] aware of the alleged invasion interfering with the use and enjoyment of the property, and that despite that notice, [the public service company] continued to transmit electricity through the line [at the same voltage].

*Id.* at 392 (citation omitted). This conclusion reinforces our earlier holding that the Families failed to allege sufficient facts to demonstrate that the Operators knew that the nuisance was resulting from or was substantially certain to result from their conduct. There are no allegations in the Families' complaint that they "made [the Operators] aware of the alleged invasion." *See id.*

without unreasonableness, there can be no intent to commit an invasion that unreasonably interferes with a plaintiff's use and enjoyment of his [or her] land. In this case, [the public service company] could not have had the intent to commit a nuisance … if the invasion interfering with the [plaintiffs'] use and enjoyment of their property fell within [PUC's] determination of reasonableness. Thus, the [plaintiffs] would fail to establish the intentional element of nuisance unless they allege that the invasion interfering with the use and enjoyment of their land is unreasonable outside of [PUC's] determination.

Thus, because an allegation of unreasonableness is central to a nuisance claim, [PUC's] determination of reasonableness sets the standard for the balance between the social utility of the transmission of electricity and possible harm to property against which the [plaintiffs] must argue. If, for example, PUC had quantified the noise level it deemed to be reasonable, then that noise level would become the standard for the level at which noise would not constitute an invasion interfering with the [plaintiffs'] use and enjoyment of their property.

*Id.* at 393. The court noted that PUC did not set a quantified level for what was reasonable but instead "determined that the electromagnetic fields anticipated were likely to be reasonable." *Id.*

¶82 As the *Van Wyk* court outlined, the plaintiffs' complaint stated that the upgraded electrical lines "emit[] continual, unreasonably loud noises that increase during times of high humidity, rain, or snow." *Id.* at 391. Thus, the court concluded, "While the complaint in this case does not quantify how the electromagnetic fields and noise interfere with their use and enjoyment of the property, we infer that the [plaintiffs] are alleging that the fields and noise exceed what [PUC] considered to be reasonable." *Id.* at 393. The court ultimately determined that the plaintiffs' complaint sufficiently stated a viable nuisance claim. *Id.* at 395.

¶83    The Families contend that *Van Wyk* is on point because the Wisconsin Public Service Commission (PSC), like PUC in *Van Wyk*, "has not adopted standards suggesting that it considered any particular level of vibration, [LFN], or infrasound or any particular frequency and intensity of flashing lights presumptively reasonable." In response, the Operators argue that, "[u]nlike in *Van Wyk*, there [is] no basis to infer a general allegation that the [Operators'] operation of the [turbines] exceeds any official limit or violates any official mandate."

¶84    The Operators argue, and we agree, that *Van Wyk* is factually dissimilar to this case and materially so. While the Families' complaint did allege that the nuisance is "unreasonable," nothing in the complaint explains why that is so. The complaint did not compare the alleged unreasonableness against any official standard regarding LFN like the standard set by PUC in *Van Wyk*. In fact, the PSC is not mentioned in the complaint, and the complaint does not allege any violation of state, federal, or administrative provisions governing the turbines. Aside from the lack of any allegations regarding official guidelines for LFN like *Van Wyk*, the complaint here also fails to allege any of the elements required for unreasonableness as outlined in *Crest*. The Families' allegation that the nuisance is "unreasonable" is a bare legal conclusion. "[A] bare conclusion [does] not fulfill[] a plaintiff's duty of stating the elements of a claim in general terms." *Doe 67C*, 284 Wis. 2d 307, ¶36 (alterations in original; citation omitted). Therefore, the Families failed to allege sufficient facts to demonstrate that the Operators' conduct was unreasonable.

## CONCLUSION

¶85    We conclude that the circuit court dismissed the Families' complaint without prejudice. We further conclude that the Families' private nuisance claims for personal injury and property damage stemming from affected "views and vistas"

constitute permanent nuisances and are barred by WIS. STAT. §§ 893.54(1m)(a) and 893.52(1). Furthermore, the Families' complaint was properly dismissed for failure to state an actionable property damage claim based on the blinking red lights, LFN, vibrations, and infrasound. Because the Families alleged an intentional but unreasonable private nuisance—in other words, that the Operators created the nuisance—they were required to allege that the Operators had knowledge of the alleged harms and that the Operators' conduct was unreasonable. The Families failed to adequately allege either of these facts. We affirm.

*By the Court.*—Order affirmed.